JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
:    Civil Action No.
A.J. WHITE,

         Plaintiff,            07 CIV 8006

    -against-                  :

CANTOR FITZGERALD, L.P., BGC   :
PARTNERS, L.P., BGC CAPITAL
MARKETS, L.P., DANIEL M.       :    **COMPLAINT**
LaVECCHIA, and KEVIN McNULTY,
                               :    <u>**JURY TRIAL DEMANDED**</u>

         Defendants.           :

------------------------------------ X

        Plaintiff A.J. White ("Ms. White"), by her attorneys,

Anderson & Ochs, LLP, as and for her Complaint against

defendants Cantor Fitzgerald, L.P. ("Cantor"), BGC Partners,

L.P. ("BGC Partners"), BGC Capital Markets, L.P. ("BGC

Capital"), Daniel M. LaVecchia ("Mr. LaVecchia") and Kevin

McNulty ("Mr. McNulty") (collectively, "Defendants"), alleges as

follows:

PRELIMINARY STATEMENT

        1.    Shortly after she joined the all-male credit

derivatives brokerage desk at BGC Partners, a self-described

"frat-house" and one of the affiliated Cantor "family of

companies," in May, 2004, until her forced resignation in

January, 2006, Ms. White was the target of repeated, incessant,

and unlawful sexual harassment and hostile work environment,

much of it from the desk's head, Mr. McNulty, with the knowledge and encouragement of BGC Partners' President for North America, Mr. LaVecchia.  This harassment included unwanted sexually-charged comments, regularly emailing video files, in the open, across shared computer monitors on the desk, depicting pornographic and other exploitative sex acts, websites for strip clubs and massage parlors, and the like, and routinely sending emails across those same shared monitors, referring to "snapping the back of Adeline's thong into the speaker," "ripping Addy all day," "hand jobs," "blow jobs," "sloppy seconds," and making $1,000 "bets" as to which of the male brokers "Adeline would like to drill."

    2.       Even as Ms. White, a 22-year-old honors graduate of Princeton University, quickly rose to become among the most successful brokers on the desk, responsible for between $50 and $100 million in market value trades just within the first few months of joining BGC Partners, her supervisors, and others on the desk, continued to sexually harass her and create an environment that marginalized, embarrassed and demeaned her; she was repeatedly told that her successful business with such gold-standard Wall-Street firms as Bear Stearns, Deutsche Bank, JP Morgan and Bank of America were only because "she was a girl," and intimating that her male clients expected quid pro quo sexual favors for business she generated with them; she was

2

regularly belittled that she did not "entertain" clients, and therefore, develop business in the same way that the male brokers could by taking clients to Scores, VIP (Vipper), Privilege, and other strip clubs and massage parlors around the City, subjected to routine displays of fists full of "play money" symbolizing the money they used for "entertainment" at such clubs, told by her supervisors and others on the desk of having spent large sums on corporate credit cards in a single night at some of these clubs with clients, "maxing out credit cards," at these clubs, and details about their sexual exploits; and she was frequently embarrassed and ridiculed when, unknown to Ms. White, others on the desk would send sexually-charged emails while she was away from the desk, falsely suggesting that they were from Ms. White.

3.    Ms. White's supervisors, including McNulty, not only actively participated in such behavior, but encouraged and rewarded it in others, including regularly excusing brokers who came late to work after a "boys' night out" with clients and referring trades, and giving credit for trades, that were the responsibility of Ms. White to male brokers.  When Ms. White refused to socialize with the others at all-night drinking parties and strip clubs, she was ostracized.  When she complained to LaVecchia and, later, again, to in-house counsel

3

about the harassment and treatment on the desk, she was rebuffed.

4.     By the end of December, 2005, after a year and a half at BGC Partners, Ms. White had earned nearly $300,000.00. In the end, however, notwithstanding her financial success and promising future, Ms. White was simply no longer able to suffer the harassment and resigned her position at BGC Partners on January 17, 2006.  In response, BGC and Mr. LaVecchia illegally withheld more than $45,000.00 in earned income due Ms. White at the time of her forced resignation, and refused to pay her that money on the illegal condition that she sign a Release from liability for the harassment, which Ms. White refused to do.

5.     On or about February 1, 2006, Ms. White enrolled as a first year post-baccalaureate pre-medical student at Columbia University, in New York City, having determined she could no longer work in the industry.  On or about November 1, 2006, Ms. White accepted a full-time position as recruiter with a small professional recruiting firm where there are ten female employees and one male employee.

6.     By this action, Ms. White seeks to recover for her promising and lucrative career irretrievably lost as a result of defendants' unlawful discrimination, sexual harassment, hostile work environment, constructive discharge, and retaliation against Ms. White, under Title VII of the Civil

4

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII"); the New York State Executive Law § 296 et seq.

("New York State Human Rights Law"); and the Administrative Code

of the City of New York § 8-101 et seq. ("New York City Human

Rights Law").

STATEMENT OF THE CASE

A.    The Parties

    1.    Plaintiff

        7.    Plaintiff, Ms. White, resides at 1322 Second
Avenue, Apartment 2D, New York, New York 10021.  Ms. White is a
25-year old magna cum laude graduate of Princeton University,
where she majored in political science and received a
certificate for additional studies in environmental biology.
She was awarded the Princeton Environmental Institute Thesis
Prize in environmental studies, the George Shultz Fellowship for
excellence in undergraduate thesis based on topics related to
public policy, and was given a grant from the former Secretary
of State to travel to six game reserves in Kenya to conduct
various research. Ms. White is a trained pianist and was also a
member of the Princeton Women's club lacrosse team.

    2.    Defendants

      (a)    Cantor

        8.    Upon information and belief, Cantor is a
limited partnership organized and existing under the laws of the

5

State of Delaware, having its "world headquarters" located at 110 East 59th Street, New York, New York 10022. Upon information and belief, Cantor is a leading financial services provider to the institutional equity and fixed income markets, with products and services including sales and trading, investment banking, asset management, market data, and market commentary. Upon information and belief, Cantor Fitzgerald has over 500 employees in the United States and overseas.

      (b)   <u>BGC Partners</u>

      9.    Upon information and belief, BGC Partners is part of the Cantor "family of companies," providing brokerage services to fixed income, interest rate, foreign exchange and derivative markets worldwide. Upon information and belief, BGC Partners' principal place of business is at 1 Seaport Plaza, 19th Floor, 199 Water Street, New York, New York, 10038 (the "Seaport Plaza office"). Upon information and belief, BGC Partners employs more than 100 persons in the United States and overseas.

      (c)   <u>BGC Capital</u>

      10.    Upon information and belief, BGC Capital is also part of the Cantor "family of companies." Upon information and belief, BGC Capital's principal place of business is at 1 Seaport Plaza, 19th Floor, 199 Water Street, New York, New York, 10038, and is a wholly-owned subsidiary of BGC Partners, through which the Defendants manage and operate several trading desks,

including its U.S. Credit Derivatives desk.  Upon information
and belief, BGC Capital employs more than 100 persons in the
United States and overseas.

       (d)   LaVecchia

       11.    Upon information and belief, Mr. LaVecchia, at
all relevant times, was and is the President of BGC Partners,
North America, and the President of BGC Capital, and, upon
information and belief, was responsible for overseeing all of
the BGC Defendants' North American operations, including the
U.S. Credit Derivatives desk, Foreign Exchange desk, Treasury
desk, and Corporate Bond desk.  Upon information and belief,
LaVecchia has the authority to hire and fire personnel for
brokerage positions at these trading desks, and has an ownership
interest in Cantor and the BGC Defendants.  Upon information and
belief, LaVecchia is resident in BGC Partners New York City
office, located at 1 Seaport Plaza, 19th Floor, 199 Water Street,
New York, New York, 10038.

       (e)   McNulty

       12.    Upon information and belief, Mr. McNulty, at
all relevant times, was and is the "head" of the Credit
Derivatives desk and Ms. White's immediate supervisor.  McNulty,
in turn, reported directly to LaVecchia.  Upon information and
belief, McNulty is resident in BGC Partners New York City

office, located at 1 Seaport Plaza, 19th Floor, 199 Water Street, New York, New York, 10038.

B.    JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction pursuant to 28 U.S.C. § 1367.

14.    Ms. White filed charges of sex-based discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 22, 2006.  The "EEOC Charges," are collectively annexed as Exhibit A.

15.    On or about July 18, 2007 – following a more that one-year investigation – the EEOC issued a determination as to the merits of Ms. White's charges under Title VII of the Civil Rights Act of 1964.  Among other things, the EEOC determined that:

> The evidence obtained by the EEOC showed that Respondents knew or should have known that [Ms. White] was subjected to sexual harassment and failed to take reasonable appropriate actions to prevent the sexual harassment from reoccurring. [Ms. White] was required to work in a sexually hostile work environment by the Respondents that was severe, pervasive and had the purpose and effect of unreasonably interfering with her work environment. [Ms. White's] decision to resign her lucrative career with the Respondent on January 17, 2006 was constructive and causally connected to the sexual harassment and sexually hostile work environment she was expected to endure while working for the Respondents.

See Exhibit B, annexed.

16.    On or about August 28, 2007, the EEOC issued to Ms. White its Notice of Right to Sue.  See Exhibit C, annexed.

17.    Ms. White served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in this Court.

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Ms. White and Defendants reside in this District and a substantial part of the events giving rise to Ms. White's claims occurred in the Southern District of New York.

C.    FACTS

1.    Background

19.    Ms. White interviewed with Mr. La Vecchia and that same day he told her the job was hers "if she was sure it was what she wanted and thought she could handle it."  Ms. White subsequently agreed to join BGC Partners in May, 2004, as a broker on its Credit Derivatives desk with a starting salary of $60,000.00, plus the opportunity to earn commissions.  At the time Ms. White joined BGC Partners, the Credit Derivatives desk employed five other traders, all male, all in their 20s and/or early 30s:  Sean Feeney, Eric Gunther, Brendan Malone, Patrick Nihan, and Ed Pockney.  Later, Sean Feeney, Eric Gunther and Ed

Pockney were replaced by three other male employees, Matt Frato, Mike Nugent, and Kevin McNulty.

20.    The desk was located on a trading floor at 57th Street and Lexington, with the other brokerage desks that comprised the business of BGC Capital. These desks were later relocated to 59th and Park, and again later moved to the Seaport Plaza office. The brokers on the derivatives desk sat, shoulder to shoulder, with two computer terminals in front of each broker, all within plain view of one another. La Vecchia worked from an all glass office in close proximity to, and in plain view of, the trading desk at all relevant times.

21.    Throughout the trading day, emails were typically kept open and routed through all computer screens ostensibly so that each trader could keep track of, and respond to, the fast-paced "bid and ask" of trading activity.

22.    Within her first few months at BGC Partners, and through her hard work and contacts from Princeton University and elsewhere, Ms. White was singularly responsible for between $50 million and $100 million, market value, of single-name credit default swaps involving institutional traders at gold standard investment houses, including Bear Stearns, JP Morgan, Bank of America, and Deutsche Bank. During this short period of time, Ms. White generated in excess of $40,000 in business for the firm for the month of July, 2004 alone. In that time, Ms.

White established herself among the top business producers on the desk.

23.    In the early Fall of 2004 - less than six months after she joined - Ms. White was offered a new employment contract, doubling her base salary and providing a more favorable formula for commissions above her base.  In the brief discussion she had with general counsel about the contract, Ms. White was told that it was "standard" and "non-negotiable."

24.    In fact, and unknown and undisclosed to Ms. White at that time, the contract unlawfully provided, among other things, that if Ms. White left BGC Partners before the end of the three-year term, she would be required to forfeit, and give back, 150% of her earned and paid income:

> Section 10. Liquidated Damages
>
> BGC and Employee agree that . . . should Employee breach this Agreement by leaving the service of BGC . . . without BGC's consent . . .BGC's damages [will be] a sum equal to 150% of Employee's total compensation during the first calendar year of his [sic] employment . . .

This contract is unlawful and unenforceable, and, purports to give, in effect, BGC Partners a license to harass Ms. White with financial impunity.

25.    Ms. White signed the contract in January, 2005. In her first full year of employment with BGC Partners, Ms.

White earned more than $300,000.00 in gross pay including salary and earned commissions.

    2.    The Sexual Harassment
           and Hostile Working
           Environment

    26.    McNulty joined BGC Partners in the Fall of 2004; he was hand-picked by La Vecchia to immediately become the "head of the desk," and to "reinvigorate" it as a result of the poor performance of the others at the desk - other than Ms. White. At that time, he announced to the brokerage desk that he was going to show them all "how to party."

    27.    McNulty began a regular "boys' night out," with the other brokers on the desk and occasionally with La Vecchia, involving late-night drinking parties at local bars and strip clubs.

    28.    In September, 2004, Ms. White was invited to join McNulty and a former desk member at one of these regular "boys' nights out" at "PJ Clarks"; during that evening, McNulty - boasting to the former broker and to Ms. White about how he was going to reinvigorate the desk - said: "I'm not going to stop until Adeline and I are sleeping together." After that evening, Ms. White tried to avoid McNulty-sponsored "boys' nights out" while trying to maintain a leading presence on the desk.

29.     In keeping with the "frat house" environment encouraged and cultivated by McNulty with the knowledge and acquiescence of La Vecchia, Ms. White was inundated with emails sent, or forwarded, to her by her supervisors and others on the trading desk including, by way of example only:

- January 25, 2005 email:
  - "snap the back of Adeline's thong into the speaker.  I want to hear that."

- March 16, 2005 email from McNulty:
  - "send Nugent to the Merrill office to give everyone hand jobs."

- August 17, 2005 email:
  - "I'm a baller . . . yo . . . Adeline just said 'nuts aren't bad for you.'  Hey! Clean it up . . ."

- August 17, 2005 email:
  - "Adeline just said nuts aren't bad for you."

    "I just b-berged her."

    "She had this twinkle in her eye, she clearly loves nuts."

    "she wants me."

    "She would drill Kenny before you."

    "$1,000 done, ask her."

- September 28, 2005 email:

  o "finally, we don't have to hear you guys
    p*ss on each other or rip addy all day."

- September 28, 2005 email:

  o "you think I am looking at the frat
    house" [referring to the Credit
    Derivatives desk]

- December 22, 2005 email from McNulty referring
  to a woman he is interviewing:

  o "Hold on she is under the desk
    . . .totally hired."  "I am not adverse
    to sloppy seconds . . .or thirds or
    fourths for that matter."

30.    Ms. White was also routinely subjected to
sexually explicit video files that were sent, or forwarded, to
her or were displayed, in the open, across the various computer
monitors on the desk – not unlike an electronics store
displaying the same image on numerous television sets.  These
included:

- websites for strip clubs and massage parlors
  such as "Silver Star Spa" and "inameeting.com"

- exploitative pictures of naked women

- pictures purporting to be Laura Bush naked

- graphic slideshows of female genitalia portrayed as the golden arches of McDonalds
- fetish emails

31.    The trading desk led by McNulty with the active participation of La Vecchia functioned more like a "frat house," than a professional work environment, and was openly and objectively hostile; McNulty and others on the desk routinely discussed nights out at strip clubs, spending $10,000.00 on corporate cards at such clubs in a single night, "maxing out their credit cards" and displaying large amounts of "play money" that were used at these clubs; others were encouraged to "spy" on the nearby N.Y.U. dormitories for naked women; pornographic materials were routinely displayed and read at the desk; and Ms. White was routinely exposed to highly offensive sexual comments and sexual exploits including, for example, "show me a hot woman, and I will show you a man tired of f***ing her."

32.    When Ms. White complained to La Vecchia about having been "rated a 7 out of 10" by one of her supervisors, and, later, again, to in-house counsel about the mistreatment and the fact that McNulty had "taken a trade away from her and had given it to a male colleague on the desk," she was told "sounds like there is more going on here, sounds like a 'lovers' spat.'"

3.    Ms. White's Constructive
      Discharge

33.    With no available recourse, and recognizing the physical and emotional toll the harassment had taken, Ms. White was left with no other alternative but to resign her position with BGC Partners and walk away from a financially lucrative and promising career.

34.    At the time she was forced to resign, Ms. White had earned and was owed more than $45,000.00 in commissions.

35.    At the time of her constructive discharge, Mr. LaVecchia advised Ms. White that he would withhold payment of Ms. White's earned income unless and until she signed a release of him and the other Defendants of any and all claims for discrimination and harassment relating to her work environment.

36.    Ms. White refused to do so.

4.    Ms. White's EEOC Filing
      and Defendants'
      Retaliation

37.    On or about March 22, 2006, Ms. White filed charges under Title VII of the Civil Rights Act of 1964 with the EEOC.

38.    Upon information and belief, the EEOC conducted a year long investigation of Ms. White's charges, including requesting and reviewing tens of thousands of pages of

documents, as well as on site interviews of past and present employees of Defendants.

39.    Upon information and belief, after Defendants produced multiple boxes of documents and after interviews were scheduled of Defendants' employees but before these interviews were to take place, Defendants through counsel Wintson & Strawn, LLP, forwarded a carefully selected handful of "instant messages" by and between Ms. White and a third party unrelated to Ms. White's employment, or to Defendants, and having nothing whatsoever to do with the facts and circumstances of Ms. White's charges of discrimination filed with the EEOC.

40.    At the time these documents were sent, defendants knew of the nature and severity of the ongoing EEOC investigation, and, upon information and belief, Defendants knew that such documents would be personally embarrassing and potentially devastating to Ms. White in her personal life if disclosed to others, including her then fiancé and current husband.

41.    Defendants' counsel's cover letter threatened Ms. White by, among other ways, inviting Ms. White's counsel to "review [the documents] with Ms. White" and then to call counsel "should you wish to discuss them."

42.    Defendants and their counsel had no lawful reason or purpose to make known to Ms. White that they were in

possession of these documents, and the nature and timing of
their disclosure were intended to coerce Ms. White into
withdrawing her charges with the EEOC, effectively terminating
the ongoing EEOC investigation of Defendants.

<u>FIRST CAUSE OF ACTION</u>

(Against Cantor Fitzgerald, BGC
Partners and BGC Capital Markets for
Sex Discrimination under Title VII)

43.    Plaintiff repeats and realleges the allegations
contained in paragraphs 1 through 42 as if separately set forth
herein.

44.    At all relevant times, Plaintiff was an
"employee" of Defendants under Title VII, 42 U.S.C § 2000e(f).

45.    Upon information and belief, Defendants Cantor
Fitzgerald, BGC Partners, and BGC Capital are "employers" under
Title VII, 42 U.S.C § 2000e(b).

46.    Defendants discriminated against Ms. White
because of her sex in violation of Title VII, 42 U.S.C § 2000e-
2(a), by the conduct described in this complaint, including by
subjecting her to discriminatory treatment based on her sex,
sexual harassment directed toward her, and by creating a hostile
work environment.

47.    As a result of Defendants' discrimination, Ms.
White has suffered substantial damages, including but not

limited to lost past and future wages and other benefits of her employment, in an amount to be determined at trial.

48.    Upon information and belief, Defendants' discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under Title VII.

### SECOND CAUSE OF ACTION

(Against all Defendants for Sex
Discrimination under the New York
State Human Rights Law)

49.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 as if separately set forth herein.

50.    At all relevant times, Plaintiff was an "employee" of Defendants for purposes of §§ 292 and 296 of the New York State Human Rights Law.

51.    On information and belief, Defendants are "employers" for purposes of §§ 292 and 296 of the New York State Human Rights Law.

52.    Defendants discriminated against Ms. White because of her sex in violation of § 296 of the New York State Human Rights Law by the conduct described in this complaint, including by subjecting her to discriminatory treatment based on her sex, sexual harassment directed toward her, and by creating a hostile work environment.

53.    As a result of Defendants' discrimination, Ms. White has suffered substantial damages, including but not limited to lost past and future wages and other benefits of her employment, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

(Against LaVecchia and McNulty for
Aiding and Abetting Sex-Based
Discrimination under New York
State Human Rights Law)

54.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23, as if separately set forth herein.

55.    Defendants Mr. LaVecchia and Mr. McNulty unlawfully aided, abetted, incited, compelled and coerced the aforementioned discriminatory actions of defendants Cantor Fitzgerald, BGC Partners, and BGC Capital Markets.

56.    By reason of such conduct, defendants Mr. LaVecchia and Mr. McNulty have violated § 296(6) of the New York State Human Rights Law, and have caused plaintiff to suffer damages including lost past and future wages and other benefits of her employment in connection with such conduct as described above.

FOURTH CAUSE OF ACTION

(Against all Defendants for Gender
Discrimination under the New York
City Human Rights Law)

57.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56, as if separately set forth herein.

58.    Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

59.    On information and belief, Defendants are "employers" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

60.    Defendants discriminated against Ms. White because of her gender in violation of § 8-107 of the New York City Human Rights Law, by the conduct described in this complaint, including by subjecting her to discriminatory treatment based on her sex, sexual harassment directed toward her, and by creating a hostile work environment.

61.    As a result of Defendants' discrimination, Ms. White has suffered substantial damages, including but not limited to lost past and future wages and other benefits of employment, in an amount to be determined at trial.

62.    Upon information and belief, Defendants' discriminatory conduct was engaged in with malice and/or

reckless indifference to Ms. White's rights, entitling her to punitive damages under the New York City Human Rights Law.

FIFTH CAUSE OF ACTION

(Against LaVecchia and McNulty for Aiding<br>and Abetting Gender Discrimination under<br>the New York City Human Rights Law)

63.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63, as if separately set forth herein.

64.    Defendants Mr. LaVecchia and Mr. McNulty unlawfully aided, abetted, incited, compelled and coerced the aforementioned discriminatory actions of Defendants Cantor Fitzgerald, BGC Partners, and BGC Capital Markets.

65.    By reason of such conduct, defendants Mr. LaVecchia and Mr. McNulty have violated § 8-107(6) of the New York City Human Rights Law, and have caused plaintiff to suffer damages including lost past and future wages and other benefits of her employment in connection with such conduct as described above.

66.    Upon information and belief, Defendants' discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under the New York City Human Rights Law.

SIXTH CAUSE OF ACTION

(Against Cantor Fitzgerald, BGC Partners
and BGC Capital Markets for Constructive
Discharge under Title VII)

67.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 66, as if separately set forth herein.

68.     Defendants discriminated against Ms. White because of her sex in violation of under Title VII, 42 U.S.C § 2000e-2(a), by the conduct described in this complaint, including by deliberately and discriminatorily creating work conditions so intolerable that any reasonable person in Ms. White's position would have felt compelled to resign.

69.     As a result of Defendants' discrimination, Ms. White has suffered substantial damages, including but not limited to lost past and future wages and other benefits of her employment, in an amount to be determined at trial.

70.     Upon information and belief, Defendants' discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under Title VII.

SEVENTH CAUSE OF ACTION

(Against all Defendants for
Constructive Discharge under the
New York State Human Rights Law)

71.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 70, as if separately set forth herein.

72.    Defendants discriminated against Ms. White because of her sex in violation of § 296 of the New York State Human Rights Law by the conduct described in this complaint, including by deliberately and discriminatorily creating work conditions so intolerable that any reasonable person in Ms. White's position would have felt compelled to resign.

73.    As a result of Defendants' discrimination, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost past and future wages and other benefits of her employment, in an amount to be determined at trial.

EIGHTH CAUSE OF ACTION

(Against all Defendants for
Constructive Discharge under the
New York City Human Rights Law)

74.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73, as if separately set forth herein.

75.    Defendants discriminated against Ms. White because of her gender in violation of § 8-107 of the New York City Human Rights Law, by the conduct described in this complaint, including by deliberately and discriminatorily creating work conditions so intolerable that any reasonable person in Ms. White's position would have felt compelled to resign.

76.    As a result of Defendants' discrimination, Ms. White has suffered substantial damages, including but not limited to lost past and future wages and other benefits of her employment, in an amount to be determined at trial.

77.    Upon information and belief, Defendants' discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under the New York City Human Rights Law.

### NINTH CAUSE OF ACTION

(Against Cantor Fitzgerald, BCG
Partners and BGC Capitals Markets
for Retaliation under Title VII)

78.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 77, as if separately set forth herein.

79.    Ms. White opposed Defendants' unlawful, discriminatory employment practices and engaged in protected

activity under Title VII by filing charges of discrimination with the EEOC on March 22, 2006.

80.    Defendants retaliated against Ms. White for having engaged in the protected activity described in the preceding paragraphs by threatening to distribute to others personal and potentially embarrassing information in her personal life in an attempt to coerce Ms. White into withdrawing her charges from the EEOC and otherwise not pursuing her rights.

81.    Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3.

82.    As a result of Defendants' retaliation, Ms. White has suffered substantial damages, including emotional distress, in an amount to be determined at trial.

83.    Defendants' retaliation was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under Title VII.

TENTH CAUSE OF ACTION

(Against all Defendants for
Retaliation under the New York
State Human Rights Law)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83, as if separately set forth herein.

85.    Ms. White opposed Defendants' unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law by filing charges of discrimination with the EEOC on March 22, 2006.

86.    Defendants retaliated against Ms. White for having engaged in the protected activity described in the preceding paragraphs by threatening to distribute to others personal and potentially embarrassing information in her personal life in an attempt to coerce Ms. White into withdrawing her charges from the EEOC and otherwise not pursuing her rights.

87.    Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of § 296 of the New York State Human Rights Law.

88.    As a result of Defendants' retaliation, Ms. White has suffered substantial damages, including but not limited to lost wages and benefits, and emotional distress, in an amount to be determined at trial.

ELEVENTH CAUSE OF ACTION

(Against all Defendants for
Retaliation under the New York
City Human Rights Law)

89.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88, as if separately set forth herein.

90.    Ms. White opposed Defendants' unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law by filing a charge of discrimination with the EEOC on March 22, 2006.

91.    Defendants retaliated against Ms. White for having engaged in the protected activity described in the preceding paragraph by threatening to distribute to others personal and potentially embarrassing information in her personal life in an attempt to coerce Ms. White into withdrawing her charges from the EEOC and otherwise not pursuing her rights.

92.    Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of § 8-107 of the New York City Human Rights Law.

93.    As a result of Defendants' retaliation, Ms. White has suffered substantial damages, including but not limited to lost wages and benefits, and emotional distress, in an amount to be determined at trial.

94.    Upon information and belief, Defendants' retaliation was engaged in with malice and/or reckless indifference to Ms. White's rights, entitling her to punitive damages under the New York City Human Rights Law.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

A.    On the First Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, punitive damages, reasonable attorneys' fees, costs and interest, all in amounts to be more specifically fixed at trial;

B.    On the Second Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, costs and interest, all in amounts to be specifically fixed at trial;

C.    On the Third Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, costs and interest, all in amounts to be specifically fixed at trial;

D.    On the Fourth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, punitive

damages, reasonable attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial;

      E.   On the Fifth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, punitive damages, reasonable attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial;

      F.   On the Sixth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, punitive damages, reasonable attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial;

      G.   On the Seventh Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, costs and interest, all in amounts to be specifically fixed at trial;

      H.   On the Eighth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, punitive

damages, reasonable attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial;

I.    On the Ninth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, an award to compensate plaintiff for mental anguish, humiliation, embarrassment and emotional injury, punitive damages, reasonable attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial;

J.    On the Tenth Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, an award to compensate plaintiff for mental anguish, humiliation, embarrassment and emotional injury, costs and interest, all in amounts to be specifically fixed at trial;

K.    On the Eleventh Cause of Action, an award of plaintiff's actual damages for loss of wages, benefits and promotional opportunities, including front pay, compensating plaintiff for loss of future salary and benefits, an award to compensate plaintiff for mental anguish, humiliation, embarrassment and emotional injury, punitive damages, reasonable

attorneys' fees, costs and interest, all in amounts to be specifically fixed at trial; and

        L.   Such other and further relief as to this Court seems just and proper.

Dated:     New York, New York
            September 12 , 2007

                                ANDERSON & OCHS, LLP

                                By: _____
                                   Mitchel H. Ochs (MO-7796)
                                 Jason A. Stern (JS-6941)

                              61 Broadway, Suite 2900
                              New York, New York 10006
                              (212) 344-3600
                              Attorneys for Plaintiff

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form

Charge Presented To:
- [ ] FEPA
- [X] EEOC

Agency(ies) Charge No(s):

**New York State Division Of Human Rights** and EEOC

State or local Agency, if any

| | |
|---|---|
| Name (Indicate Mr., Ms., Mrs.) **Ms. Adeline J. Peff** | Home Phone (Incl. Area Code) **(212) 661-3368** |

Street Address **C/O Mitchel H. Ochs, Esq., Anderson & Ochs, Llp, New York, NY 10017**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name **CANTOR FITZGERALD, L.P.** | No. Employees, Members **500 or more** | Phone No (Include Area Code) **212-938-5000** |
|---|---|---|

Street Address **100 East 59th Street, New York, New York 10022**

DISCRIMINATION BASED ON (Check appropriate box(es))
[X] SEX

DATE(S) DISCRIMINATION TOOK PLACE Earliest **01/2006** Latest **01/2006**

THE PARTICULARS ARE:

I believe I was subjected to employment discrimination by the Respondent because of my sex (female) in violations of Title VII of the Civil Rights Act of 1964, as amended, and all applicable New York State Laws. See attached fourteen (14) page statement of complaint with attachments (A to G).

Date **3/22/06**

**3/22/06**

JASON A. STERN Notary Public, State Of New York No. 02ST6087672 Qualified In Nassau County Commission Expires February 24, 2007

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 520-2006-00842 |

**New York State Division Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Adeline J. Peff** | **(212) 661-3368** | |

Street Address                    City, State and ZIP Code

**C/O Mitchel H. Ochs, Esq., Anderson & Ochs, Llp, New York, NY 10017**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **BGC PARTNERS, L.P.** | **500 or More** | **(800) 707-8865** |

Street Address                    City, State and ZIP Code

**111 East 58th Street,  New York, NY 10022**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01/2006**   Latest **01/2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe I was subjected to employment discrimination by the Respondent because of my sex (female) in violations of Title VII of the Civil Rights Act of 1964, as amended, and all applicable New York State Laws.  See attached fourteen (14) page statement of complaint with attachments (A to G).

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 3/22/06 _____<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>3/22/06 |

JASON A. STERN
Notary Public, State Of New York
No. 02ST6087672
Qualified In Nassau County
Commission Expires February 24, 2007

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form

Charge Presented To:
- [ ] FEPA
- [X] EEOC

Agency(ies) Charge No(s):

New York State Division Of Human Rights

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Adeline J. Peff | (212) 661-3368 | |

Street Address — City, State and ZIP Code

C/O Mitchel H. Ochs, Esq., Anderson & Ochs, Llp, New York, NY 10017

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BGC CAPITAL MARKETS, L.P. | 500 or more | |

Street Address — City, State and ZIP Code

110 West 59th Street, New York, New York 10022

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es))

- [ ] RACE
- [ ] COLOR
- [X] SEX
- [ ] RELIGION
- [ ] NATIONAL ORIGIN
- [ ] RETALIATION
- [ ] AGE
- [ ] DISABILITY
- [ ] OTHER (Specify below)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/2006   Latest: 01/2006

- [ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s))

I believe I was subjected to employment discrimination by the Respondent because of my sex (female) in violations of Title VII of the Civil Rights Act of 1964, as amended, and all applicable New York State Laws. See attached fourteen (14) page statement of complaint with attachments (A to G).

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct

Date: 3/22/06

Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE

3/22/06

JASON A. STERN
Notary Public, State Of New York
No. 02ST6087672
Qualified In Nassau County
Commission Expires February 24, 2007

Exhibit B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Adeline Peff
240 E 76th Street, Apt. 1 U
New York, NY.  10021          (Charging Party)

vs.

BGC Partners
One Seaport Plaza
199 Water Street
New York, NY.  10038

Cantor Fitzgerald
100 East 59th Street
New York, NY.  10022

BGC Capital Markets
110 West 59th Street
New York, NY.  10022          (Respondents)

Re:    Adeline Peff v. BGC Partners, Cantor Fitzgerald, and BGC Capital Markets
         EEOC Charge Numbers:  523-2006-00292, 523-2006-00293, and, 523-2006-00842

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met.  According to the above referenced charge of employment discrimination, Adeline Peff, hereinafter referred to as Charging Party, alleged she was subjected to sexual harassment, a hostile work environment, and constructive discharge by Cantor Fitzgerald, BGC Partners, and BGC Capital Markets, hereinafter referred to as Respondents, because of her Gender (Female) in violations of Title VII of the Civil Rights Act of 1964, as amended.

The evidence obtained by the EEOC showed that Respondents knew or should have known that Charging Party was subjected to sexual harassment and failed to take reasonable appropriate actions to prevent the sexual harassment from reoccurring.  Charging Party was required to work in a sexually hostile work environment by the Respondent that was severe, pervasive and had the

purpose and effect of unreasonably interfering with her work environment. Charging Party's decision to resign her lucrative career with the Respondent on January 17, 2006 was constructive and causally connected to the sexual harassment and sexually hostile work environment she was expected to endure while working for the Respondents.

Section 706(b) of Title VII requires that if the Commission determines there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. If you do not contact Kenneth An within ten (10) days of receipt of this letter and indicate a willingness to enter the conciliation process, the Commission will assume that conciliation has failed. Investigator Kenneth An can be reached at 1-617-565-3206, during normal business hours, Monday to Friday.

Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute, and Section 1601.26 of the Commission's procedural regulations.

If Respondent declines to enter into a conciliation discussion, or when the Commission's representative for any other reason is unable to secure a settlement acceptable to the Commission, I will so inform the parties in writing and advise them of the court enforcement alternative available to the Charging Party, aggrieved person, and the Commission.

On Behalf of the Commission:

Robert L. Sanders
Area Office Director

JUL 1 8 2007
_____
Date

Cc:   Mitchel Ochs, Esq.
Anderson & Ochs, LLP
369 Lexington Avenue
16th Floor
New York, NY. 10017

Exhibit C

EEOC Form 161-A (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To:  Adeline J. Peff
     C/O Mitchel H. Ochs, Esq.
     Anderson & Ochs, Llp
     New York, NY 10017

From:  Boston Area Office
       John F. Kennedy Fed Bldg
       Government Ctr, Room 475
       Boston, MA 02203

☐  On behalf of person(s) aggrieved whose identity is
   CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 523-2006-00292 | Feng K. An, Supervisory Investigator | (617) 565-3192 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Robert L. Sanders,_
**Robert L. Sanders,**
**Area Office Director**

AUG 2 8 2007

_(Date Mailed)_

Enclosures(s)

cc:  BGC PARTNERS, L.P.
     One Seaport Plaza
     199 Water Street
     New York, NY. 10038
     Attn.  Andrew Kofsky, Esq.

EEOC Form 161-A (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
## (CONCILIATION FAILURE)

| To: | Adeline J. Peff | From: | Boston Area Office |
|---|---|---|---|
| | C/O Mitchel H. Ochs, Esq. | | John F. Kennedy Fed Bldg |
| | Anderson & Ochs, Llp | | Government Ctr, Room 475 |
| | New York, NY 10017 | | Boston, MA 02203 |

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 523-2006-00293 | Feng K. An, Supervisory Investigator | (617) 565-3192 |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Robert L. Sanders,
Area Office Director

AUG 2 8 2007

*(Date Mailed)*

Enclosures(s)

cc:   BGC PARTNERS, L.P.
      One Seaport Plaza
      199 Water Street
      New York, NY. 10038
      Attn.  Andrew Kofsky, Esq.

EEOC Form 161-A (3/98)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| | |
|---|---|
| To:  Adeline J. Peff<br>C/O Mitchel H. Ochs, Esq.<br>Anderson & Ochs, Llp<br>New York, NY 10017 | From:  Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-00842 | Feng K. An,<br>Supervisory Investigator | (617) 565-3192 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Robert L. Sanders,
Area Office Director

AUG 2 8 2007

*(Date Mailed)*

Enclosures(s)

cc:  **BGC PARTNERS, L.P.**
**One Seaport Plaza**
**199 Water Street**
**New York, NY.  10038**
**Attn.  Andrew Kofsky, Esq.**