

# EMPLOYMENT AGREEMENT

AGREEMENT, dated as of December __, 2004, by and between BGC Capital Markets, L.P., a Delaware limited partnership, with offices at 135 E. 57th Street, New York, New York 10022, together with its successors and assigns (collectively, "**BGC**"), and Adeline Peff, residing at 1322 Second Avenue, Apartment 2D, New York, New York 10021 ("**Employee**").

BGC and Employee desire to enter into an employment agreement ("**Agreement**"), on the terms and conditions set forth below, to provide for the employment of Employee for the term herein specified. In consideration of the mutual agreements set forth below, BGC and Employee therefore agree:

Section 1. <u>Employment and Term</u>.

(a) BGC hereby agrees to employ Employee, and Employee hereby agrees to serve, on the terms and conditions set forth in this Agreement, as a broker of credit derivative swaps with the duties set forth in Section 2, for a term beginning on January 3, 2005 (the "**Start Date**") and ending January 2, 2007 (such period, together with any subsequent employment period, referred to herein as the "**Term of Employment**"), unless earlier terminated as specified in Section 4 below.

(b) The Term of Employment shall, unless terminated earlier, be automatically extended for successive periods of one year, on the same terms and conditions as contained in this Agreement (including and in particular the provision for Liquidated Damages so that on an extension of the Term of Employment, as provided herein, the Liquidated Damages shall also be extended in accordance with Section 10), unless (i) either party notifies the other party at least thirty (30) days prior to the expiration of the Term of Employment of its intention not to renew this Agreement or (ii) this Agreement is otherwise terminated in accordance with its terms, including without limitation termination for Cause under Section 4.

Section 2. <u>Duties</u>.

Employee agrees that during the Term of Employment, Employee will perform such duties and assignments relating to the business of BGC and any entity whether now existing or hereafter arising that directly or indirectly, through one or more intermediaries, controls or is controlled by or under common control with BGC (each such entity, an "**Affiliate**"), as the management of BGC and/or their designees shall direct. During the Term of Employment, Employee shall, except during customary vacation periods and periods of illness, devote all of Employee's business time, attention and energies to the performance of Employee's duties and to the business and affairs of BGC and to promoting the best interests of BGC, and Employee shall not, either during or outside of such normal business hours, directly or indirectly, engage in any activity inimical to such best interests. BGC retains the right, in its sole discretion, to provide Employee with alternative work of a broadly similar nature to the work Employee may be asked to normally perform under this Agreement.

Section 3. <u>Compensation During the Term of Employment</u>.

BGC shall pay to Employee compensation as follows:

(a) BGC shall pay to Employee an annual base salary of $110,000 ("**Base Salary**"), less all applicable withholdings and payable in accordance with BGC's then current payroll practices.

(b) Employee shall also be entitled to earn commission (the "**Commission Payment**"), which shall equal 55% of the Net Revenues (as defined below) collected by BGC (as determined on a monthly basis in accordance with BGC's then current accounting policies and practices (the "**Calculation Month**"), less Employee's salary, and travel and entertainment expenses incurred by the Employee during the Calculation Month to the extent that such travel and entertainment expenses exceed 3% of Net Revenues (before deduction for any eSpeed service charge) for such Calculation Month. "**Net Revenues**" means commissions personally generated by the Employee, less floor expenses and other direct expenses, including, without limitation, 2.5% eSpeed service charge, $10,000 per month seat charge, discounts, rebates, charges, losses, trading losses, damages and/or other expenses, all as determined in accordance with BGC's then current account policies and practices. The Commission Payment is payable monthly within 90 days after the last day of the Calculation Month. It is a condition precedent to receiving payment of the Commission Payment that Employee remain employed by BGC (or any Affiliate) at the time payment is made. At BGC's discretion, the expenses incurred during any one Calculation Month may be deducted in whole or in part in any Calculation Month.

(c) Employee understands and agrees that, in the event that Employee is to receive at least $200,000 in compensation for the relevant period, then up to 10% of such aggregate compensation that Employee is to receive for such period may, as determined in the sole discretion of BGC, consist of (rather than cash) a Grant Award and a credit to a Grant Tax Payment Account, subject to the terms of an Award Agreement between Employee and Cantor Fitzgerald, L.P.

(d) Employee shall be entitled each year to participate in such employee benefit plans and programs as BGC may from time to time generally offer to employees of BGC. Employee will also be entitled to a vacation or vacations in accordance with the policies of BGC as determined by the management of BGC from time to time. BGC shall not pay Employee any additional compensation for any vacation time not used by Employee, other than as required by law.

(e) All compensation shall be subject to withholding and other applicable taxes. Employee further agrees that (i) any sums owed (or owing in the future) to BGC (or any Affiliate) by Employee may be deducted from Employee's paychecks (or any bonus checks) in amounts that are in accordance with applicable law and (ii) any sums owed to American Express and Employee's American Express Corporate Charge Card that are 90 days past due for payment may be deducted by BGC from Employee's paycheck (or any bonus checks) in amounts that are in accordance with applicable law and make payments to American Express on Employee's behalf and (iii) any sums owed to American Express and Employee's American Express Corporate Charge Card upon the termination of Employee's employment (for whatever reason) may be deducted by BGC from any outstanding paycheck in amounts that are in accordance with applicable law and make payments to American Express on Employee's behalf. Moreover,

Employee understands and agrees that excess travel and entertainment expenses, as determined in BGC's sole discretion, shall be allocated and treated in accordance with BGC's then current practices.

(f)   All compensation shall be earned and payable only if Employee is employed by BGC or an Affiliate at the time payment is made. Employee agrees that any compensation paid to Employee subsequent to the termination of Employee's employment with BGC shall only be paid upon execution by Employee of a general unconditional release in favor of BGC in a form satisfactory to BGC.

Section 4. Termination.

(a)   During the Term of Employment, BGC may terminate this Agreement with Employee for Cause and notice of such termination shall be sent to Employee. For the purposes hereof, "**Cause**" means Employee's (i) nonperformance or breach by Employee of any of the provisions of this Agreement, (ii) conviction of a crime under U.S. Federal, state or local laws or any applicable foreign laws (including any pleas of *nolo contendere*), (iii) serious misconduct in connection with or affecting the business of BGC or any Affiliate, (iv) serious neglect or gross negligence in performing Employee's duties hereunder, (v) failure to perform Employee's duties hereunder after delivery to Employee by BGC or an entity owned or controlled by BGC of written notice identifying the duties not being performed by Employee, which failure may include the failure to maintain any regulatory approvals or licenses necessary to perform Employee's duties, (vi) violation by Employee or Employee aiding and abetting any violation by another, as reasonably determined by BGC, of any law, order, rule or regulation pertaining to Employee, BGC or its affiliates including, among others, the rules, regulations and by laws of the National Association of Securities Dealers and the New York Stock Exchange, (vii) illegal drug use by Employee, or (viii) request for reimbursement of expenses not actually incurred by Employee and/or not in accordance with BGC's travel and entertainment policy, or assisting others in such efforts.

(b)   Subsequent to a notice of election to terminate the Term of Employment pursuant to Paragraph 1, if BGC elects, at its sole discretion, to continue to employ the Employee, the Employee will be an employee at will and BGC may terminate the employment of Employee without Cause. This Agreement shall no longer govern the terms of Employee's compensation when Employee is an employee at will. While Employee is an employee at will, the terms of Employee's employment, including, but not limited to Employee's compensation, shall be governed by BGC's policies then in effect; provided, however, that Employee shall remain subject to the restrictions set forth in Section 5 hereof.

(c)   If in BGC's judgment during the Term of Employment, by reason of physical or mental disability, Employee is incapable of performing the essential functions of his position, with or without reasonable accommodation for a period of 60 out of 180 consecutive days, BGC at its option may thereafter terminate this Agreement with Employee and notice of such termination may be sent to Employee. Salary of Employee during any period of disability shall be in accordance with the then-current policy of BGC. If Employee shall die during the Term of

3

Employment, the Term of Employment shall automatically terminate; in the event of such death, or if BGC terminates the Term of Employment pursuant to this Section, BGC shall pay to Employee or to Employee's legal representatives, or in accordance with a direction given by Employee to BGC in writing, Employee's compensation to the date on which such death or termination for disability occurs.

(d)     In the event BGC notifies Employee of BGC's election to terminate this Agreement with Employee, such termination shall become effective (i) if mailed, three (3) days after mailing of notice thereof to Employee or (ii) if delivered by hand, upon delivery.

(e)     In the event Employee is terminated for Cause or because of disability, he will promptly resign from any officer and/or director positions he may hold.

Section 5. <u>Non-Competition; Non-Disclosure;
Non-Solicitation; Non-Disparagement</u>.

(a)     During the Term of Employment and until 180 days after termination of his employment, for any reason whatsoever, Employee shall not, alone or with others, directly or indirectly, participate, engage, render services to or become interested in (as owner, stockholder, partner, lender or other investor, director, officer, employee, consultant or otherwise) any business activity that is in competition with, or otherwise related to or arises from, the then current or contemplated business of BGC or any Affiliate. Notwithstanding any other provisions herein, nothing in this Agreement shall prohibit Employee from acquiring or owning in accordance with BGC's policies and procedures regarding personal securities transactions, less than 1% of the outstanding securities of any class of any corporation that are listed on a national securities exchange or traded in the over-the-counter market. As additional and specific consideration for Employee's agreement to refrain from competition as described in this Section 6(a), BGC agrees to continue to pay Employee at the rate of 1/12 Employee's Salary per month during the period of 180 days from termination of the Term of Employment, <u>provided</u>, <u>however</u>, that BGC may, at its sole option, elect to terminate such payments at any time and thereby terminate any further obligations of Employee pursuant to this Sections 6(a). Any such election shall only be effective if delivered to Employee in writing by an authorized representative of BGC.

(b)     Employee acknowledges that during the Term of Employment he will have access to and become acquainted with BGC's confidential records. Employee hereby covenants and agrees that during the Term of Employment and thereafter, Employee shall keep strictly confidential all information which Employee presently possesses or which Employee may obtain during the course of Employee's employment or any consulting arrangement with BGC with respect to its client information, trade secrets, copyrights, patents, trademarks, service marks, source code, business practices, finances, developments, affairs, records, data, formulae, documents, intangible rights, other intellectual property and other confidential information (collectively, "<u>**Confidential Information**</u>") of BGC or any Affiliate, or information about BGC or any Affiliate not generally known to the public and not disclose the same, directly or indirectly, to any other person, firm or corporation or utilize the same, except solely in the course

4

of performing his duties on behalf of BGC and its Affiliates pursuant to this Agreement. All Confidential Information relating to the business of BGC and its Affiliates which Employee shall develop, conceive, produce, prepare, use, construct or observe during the Term of Employment shall be and remain the sole property of BGC or the relevant Affiliate. Employee further agrees that upon the termination of Employee's employment (irrespective of the time, manner or cause of termination), Employee will surrender and deliver to BGC all Confidential Information, including but not limited to work papers, memoranda, lists, books, records and data of every kind, as well as any copies thereof, relating to or in connection with BGC's and its Affiliates' Confidential Information and business. It is understood that Employee may be required to disclose Confidential Information pursuant to subpoena, other court process, at the direction of governmental or self-regulatory agencies (including the National Association of Securities Dealers, Inc. or the Securities and Exchange Commission) or otherwise as required by law.

(c) During the Term of Employment and for a period of eighteen (18) months after the termination of his employment, for any reason whatsoever, Employee shall not, alone, or with others, directly or indirectly, solicit, hire or retain for Employee's benefit or the benefit of any person or organization other than BGC and its Affiliates, the employment or other services of any individual employed by BGC or any Affiliate or serving as a consultant or independent contractor at the time of such termination or within six months prior thereto.

(d) Employee recognizes that he is being placed in a position of trust and confidence and as such will not during the Term of Employment or thereafter defame, disparage, libel or slander BGC or its Affiliates in any way and will not during the Term of Employment or thereafter contact, respond to any request from or in any way discuss, criticize, defame, disparage, libel or slander BGC or its Affiliates, employees, agent to the media (print, television, or otherwise, whether on or off the record).

Section 6. <u>Warranty</u>.

Employee warrants that Employee shall use his best efforts to generate revenue on behalf of BGC during the Term of Employment and to advance the interests of BGC. Employee also represents, warrants and covenants that Employee possesses and will maintain all licenses, permits and qualifications necessary to perform Employee's duties hereunder. Beginning on the first anniversary of the Start Date and at monthly intervals thereafter for the remainder of the Term of Employment, including any renewal period (each such date, a "**Measurement Date**"), BGC will calculate the average Net Revenue generated by Employee over the three months preceding such Measurement Date (such amount, the "**Average Net Revenue**"). Employee warrants that on each Measurement Date, Average Net Revenue will be equal to or greater than two and one-half (2 ½) times Employee's Base Salary. If as of any Measurement Date Employee's Average Net Revenue is less than two and one-half (2 ½) times Employee's average Base Salary over the applicable three-month period, BGC, in its sole and absolute discretion, may immediately reduce the Base Salary paid to Employee under Section 3(a) of this Agreement by twenty-five percent (25%). BGC may not so reduce Employee's Base Salary more than once during the Term of Employment.

Section 7. <u>Other Employee Obligations.</u>

(a) In order to retain and enhance BGC's standing and integrity at the forefront of the business community, the business conduct of Employee must be totally professional and Employee must at all times observe appropriate standards of politeness and courtesy in Employee's behavior both with the public and with colleagues. Employee is required to well and faithfully serve BGC and to the best of Employee's ability use Employee's best endeavors at all times to promote the development of BGC's business and reputation.

(b) Employee must maintain the highest standards of honesty and fair dealing in Employee's work for BGC and any Affiliate. Great importance is attached to the observance of BGC's policies and procedures as expressed in any personnel or compliance manual, all Federal and State laws and regulations (or if applicable, those of a foreign jurisdiction) and the rules of the National Association of Securities Dealers, Inc. or any other applicable self-regulatory organization. Material breach of any of these obligations may be regarded as misconduct and may result in summary dismissal for Cause.

(c) If at any time Employee is, directly or indirectly, approached or solicited by a third party, with a view to or with the intention of taking up employment or entering into some other business relationship, whether directly or indirectly, with that of any other party which is involved in a business which is competitive with the current or then contemplated business of BGC or any Affiliate, as known to Employee, Employee shall disclose that fact immediately in writing to Employee's immediate superior. Moreover, during the Term of Employment and any extensions of employment, Employee shall not, directly or indirectly, solicit, encourage the solicitation of, or discuss employment or entering into a business relationship, whether directly or indirectly with a party which is involved in a business which is competitive with the current or then contemplated business of BGC or any Affiliate, as known to Employee.

(d) During the Term of Employment and any extensions thereof, Employee shall not, without the written consent of BGC, enter into an agreement, whether oral, written or otherwise, with any person, firm or corporation providing for Employee's future employment by such or any other person, firm or corporation.

Section 8. <u>Injunctive Relief.</u>

The parties acknowledge that in the event of a breach or a threatened breach by Employee of any of Employee's obligations under this Agreement, BGC and its Affiliates will not have an adequate remedy at law. Accordingly, and notwithstanding Section 9 hereof, in the event of any such breach or threatened breach by Employee, BGC and its Affiliates shall be entitled to specific performance of this Agreement or such equitable and injunctive relief, without proof of special damages or the posting of any bond or other security, as may be available to restrain Employee and any business, firm, partnership, individual, corporation or entity participating in such breach or threatened breach from the violation of the provisions hereof. BGC and its Affiliates will be entitled to seek such relief, without the posting of any bond or other security, in court pursuant to Section 7502(c) of the New York Civil Practice Law and Rules, or any successor provision thereto. Nothing herein shall be construed as prohibiting

6

BGC or any Affiliate from pursuing any other remedies available at law or in equity for such breach or threatened breach in any dispute submitted to arbitration under Section 9 hereof.

Section 9. <u>Arbitration</u>.

Subject to the provisions of Sections 8 and 10, any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration before a panel of three arbitrators in New York, New York, according to the rules of the National Association of Securities Dealers, Inc. (or, at BGC's sole discretion, the American Arbitration Association or any other alternative dispute resolution organization) now in force and hereafter adopted and the laws of the state of New York then in effect. The arbitrators shall make their award in accordance with and based upon all provisions of this Agreement and judgment upon any award rendered by the arbitrators shall be entered in any court having jurisdiction thereof. However, it is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary or punitive damages or amounts in the nature of special, exemplary or punitive damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration, except that the arbitrators shall be authorized and entitled to include as part of any award rendered by them in favor of BGC Liquidated Damages (as herein defined) provided for in this Agreement.

It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters arising in connection with this Agreement and neither party hereto shall institute any action or proceeding in any court of law or equity other than: (a) to request enforcement of the arbitrators award hereunder; or (b) by BGC to bring an action or proceeding seeking injunctive relief from a court of competent jurisdiction as set forth in paragraph 8. The foregoing sentence shall be a bona fide defense to any action or proceeding instituted contrary to this Agreement.

Section 10.    <u>Liquidated Damages</u>.

In consideration for the promise by BGC not to terminate Employee other than for Cause, BGC and Employee agree that it would be extremely difficult to calculate the damage to be caused to BGC by Employee should Employee breach this Agreement by leaving the service of BGC (other than as a result of Employee's death or by termination of this Agreement by BGC) without BGC's consent prior to the expiration of the full Term of Employment ("**<u>Liquidated Damages Breach</u>**"). Therefore, Employee and BGC have made a good faith effort to pre-estimate the damages, costs, losses and injuries BGC will sustain by reason of such Liquidated Damages Breach. Such effort has resulted in the following so as to fix, liquidate and determine BGC's damages:

(i) a sum equal to 150% of Employee's total compensation during the first calendar year of his employment in the event of a Liquidated Damages Breach during the first calendar year of his employment; (ii) a sum equal to 66% of Employee's total compensation during the prior calendar year in the event of a Liquidated Damages Breach at a time when more than four months but no more than one year remains of the Term of Employment, as extended; or (iii) a

sum equal to 25% of Employee's total compensation during the prior calendar year in the event of a Liquidated Damages Breach at a time when four months or less remains of the Term of Employment, as extended, as the case may be ("**Liquidated Damages**").

Employee acknowledges that the Liquidated Damages are not a penalty and are not unreasonable or disproportionate to the probable loss to be suffered by BGC in the event of a Liquidated Damages Breach. However, nothing herein shall prevent BGC from recovering its actual damages should such actual damages exceed the Liquidated Damages. In the event the Liquidated Damages provision is determined to be void or otherwise inapplicable or unenforceable, BGC shall have the right to avail itself of any and all other remedies without limitation.

Section 11.   Entire Agreement; Enforceability; Partial Invalidity, Attorneys' Fees.

This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and no modification or waiver of any provision hereof will be binding upon any party unless in writing and signed by the parties hereto.

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted. In the event that a court of competent jurisdiction shall determine that any covenant set forth in this Agreement is impermissibly broad in scope, duration or geographical area, or is in the nature of a penalty, then the parties intend that such court should limit the scope, duration or geographical area of such covenant to the extent, and only to the extent, necessary to render such covenant reasonable and enforceable, and enforce the covenant as so limited.

Employee agrees that if Employee brings an action, claim or proceeding against BGC, any Affiliate, or any partner, stockholder, officer, director or employee of any of them (each a "**Party**"), that relates to or implicates this Agreement, whether as to is validity, efficacy or otherwise, in the event that any of such Parties should prevail in such action, Employee shall pay the reasonable attorney's fees of such Party or Parties.

Section 12.   Miscellaneous.

This Agreement:

(a)   shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs, executors and administrators. No waiver or modification shall be deemed to be a subsequent waiver or modification of the same or any other term, covenant or condition in this Agreement;

(b)   may not be assigned, in whole or in part, by either party hereto without the prior written consent of the other party (any purported assignment hereof in violation of this provision being null and void); however, it may be assigned without recourse, in whole or in part by BGC

to any Affiliate or to any successor in interest of BGC or any Affiliate by merger, consolidation, reorganization or otherwise, and may be executed in various counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof. Employee hereby waives personal service of process, and irrevocably submits to service of process by mail; and

(c) shall be effective only when executed both by BGC and Employee and upon such shall be binding and enforceable; the Agreement in unsigned form does not become an offer of any kind and does not become capable of acceptance until executed by Employee, and at such time, the Agreement is capable of acceptance by signature by an official at BGC; and

(d) may be executed in one or more counterparts, all of which together shall constitute but one Agreement.

Section 13.  **Notices.**

All notices pursuant to this Agreement shall be in writing, shall either be delivered by hand or mailed by certified or registered mail, return receipt requested, postage prepaid to the address set forth above or to such other address as may be designated for such purpose in written notice and shall be effective upon receipt when delivered by hand or on the third business day after the day on which mailed. Any notice to BGC hereunder will similarly be sent to:

>Stephen M. Merkel, Esq.
>Executive Vice President and
>General Counsel
>BGC Capital Markets, L.P.
>135 East 57th Street
>New York, New York 10022
>Tel: (212) 829-4829
>Fax: (212) 829-4708

Section 14.  No Conflicts.

Employee represents and warrants that Employee is not in default under, or in breach of, any agreement requiring Employee to preserve the confidentiality of any information, client lists, trade secrets or other confidential information or agreements not to compete or interfere with any prior employer including, but not limited to, any employment agreement; and neither the execution and delivery of this agreement nor the performance by Employee of Employee's obligations hereunder will conflict with, result in a breach of, or constitute a default under, any confidentiality or non-competition agreement or any employment agreement to which Employee is a party or to which Employee may be subject.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

BGC CAPITAL MARKETS, L.P.

By: _____
Name: Daniel LaVecchia
Title: President

ADELINE PEFF

_____
Adeline Peff

C:\Documents and Settings\dlavecchia\Local Settings\Temporary Internet Files\OLK336\Broker Employment Agreement - Adeline Peff v1.doc