UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
A.J. WHITE,                           :
                                      :
              Plaintiff,              :    Civil Action No.:
                                      :    07 Civ 8006 (DAB)
        -against-                     :
                                      :
CANTOR FITZGERALD, L.P., BGC          :
PARTNERS, L.P., BGC CAPITAL           :    (Filed Electronically)
MARKETS, L.P., DANIEL M.              :
LaVECCHIA, and KEVIN McNULTY,         :
                                      :
              Defendants.             :
                                      :
------------------------------------- X

PLAINTIFF'S ANSWERING
MEMORANDUM OF LAW

ANDERSON & OCHS, LLP
61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006
(212) 344-3600

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................... i

TABLE OF AUTHORITIES ....................................... ii-iv

PRELIMINARY STATEMENT .......................................... 1

    UNENFORCEABILITY ........................................... 2

    BEYOND THE SCOPE ........................................... 2

STATEMENT OF THE CASE .......................................... 4

    A.    The Parties ......................................... 4

    B.    Background .......................................... 5

    C.    The Sexual Harassment and Hostile
          Work Environment ................................... 9

    D.    Prior Proceedings ................................. 11

    E.    Defendants' Retaliation ........................... 12

ARGUMENT ..................................................... 13

    DEFENDANTS' MOTION TO COMPEL ARBITRATION
    SHOULD BE DENIED IN ITS ENTIRETY ...................... 13

        A.    The Arbitration Provision is
            Void and Unenforceable ........................ 14

            1.    The Employment Contract is
               Void and Unenforceable ................... 14

            2.    The Arbitration Provision
               is Void and Unenforceable ................ 16

        B.    None of Ms. White's Claims Fall
            Within the Scope of the
            Arbitration Clause ........................... 20

CONCLUSION ................................................... 24

## TABLE OF AUTHORITIES

**Federal Cases**                                                         Page

Benson v. Lehman Brothers, Inc., 2005 WL
    1107061 (S.D.N.Y. 2005) .................................. 23

Chamois v. Countrywide Home Loans, 2003 U.S.
    Dist. LEXIS 23202 (S.D.N.Y. 2003) ........................ 23

Coffey v. Cushman & Wakefield, Inc., 2002
    U.S. Dist. LEXIS 13226 (S.D.N.Y. 2002) ................ 20, 22

Cronas v. Willis Group Holdings, Ltd., 2007
    U.S. Dist. LEXIS 68797 (S.D.N.Y. 2007) ......... 20-21, 22, 23

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S.
    213 (1985) ............................................... 13

Desiderio v. National Ass'n of Secs.
    Dealers, 191 F.3d 198 (2d Cir. 1999) ..................... 18

Gambardella v. Pentec, Inc., 218 F. Supp. 2d
    237 (D. Conn. 2002) ...................................... 18

Gilmer v. Interstate/Johnson Lane Corp., 500
    U.S. 20 (1991) .......................................... 16

Graham Oil Co. v. Arco Products Co., 43 F.3d
    1244 (9th Cir. 1994) cert. denied, 516
    U.S. 907 (1995) ......................................... 17

Hoffman v. Aaron Kamhi, Inc., 927 F. Supp.
    640 (S.D.N.Y. 1996) .............................. 20, 21, 22

JLM Industries, Inc. v. Stolt-Nielsen SA,
    387 F.3d 163 (2d Cir. 2004) .......................... 19, 20

Martin v. SCI Mgmt. L.P., 296 F. Supp. 2d
    462 (S.D.N.Y. 2003) ..................................... 23

Mehler v. Terminix Int'l Co., 205 F.3d 44
    (2d Cir. 2000) .......................................... 13

Pachter v. Bernard Hodes Group, Inc., 2005
    U.S. Dist. LEXIS 18005 (S.D.N.Y. 2005) .................. 14

ii

**Federal Cases Cont'd**                                          Page

Prima Paint Corp. v. Flood & Conklin Mfg.
    Co., 388 U.S. 395 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Stern v. Espeed, Inc., 2006 U.S. Dist. LEXIS
    68655 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Wigton v. Rosenthall, 747 F. Supp. 247
    (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**State Cases**

Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 550
    N.E.2d 410 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d
    623, 619 N.E.2d 998 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Harmon v. Ivy Walk, Inc., 2006 N.Y. Misc.
    LEXIS 3028 (S. Ct. N.Y. Co. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 15

Keen v. Jason, 187 N.Y.S.2d 825 (S. Ct.
    Suffolk Co. 1959), aff'd, 207 N.Y.S.2d
    1001 (2d Dep't 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Szerdahelyi v. Harris, 67 N.Y.2d 42, 490
    N.E.2d 517 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tuttle v. Geo McQuesten Co., 227 A.D.2d 754,
    642 N.Y.S.2d 356 (3d Dep't 1996) . . . . . . . . . . . . . . . . . . . . . . . . 14

Weiner v. Diebold Group, Inc., 173 A.D.2d
    166, 568 N.Y.S.2d 959 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . 14

iii

## Statutes and Other Authorities                    Page

Farnsworth on Contracts § 5.8, at 70 (1990) ................... 18

New York Labor Law § 193 (McKinney 2007) ...................... 14

22 N.Y. Jur. 2d Contracts § 158 .............................. 15

22 N.Y. Jur. 2d Contracts § 162 .............................. 15

22A N.Y. Jur. 2d Contracts § 472 ............................. 20

iv

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                    :
A.J. WHITE,                         :
                                    :
              Plaintiff,            :    Civil Action No.:
                                    :    07 Civ 8006 (DAB)
         -against-                  :
                                    :
CANTOR FITZGERALD, L.P., BGC        :
PARTNERS, L.P., BGC CAPITAL         :    (Filed Electronically)
MARKETS, L.P., DANIEL M.            :
LaVECCHIA, and KEVIN McNULTY,       :
                                    :
              Defendants.           :
                                    :
----------------------------------- X
```

PLAINTIFF'S ANSWERING
MEMORANDUM OF LAW

PRELIMINARY STATEMENT

Plaintiff Adeline J. White (nee Peff), respectfully submits this memorandum of law in opposition to Defendants' motion seeking to remove this action (apparently) to industry arbitration.

As detailed further below, Defendants have no legal ground to insist that Ms. White litigate where they prefer rather than in a forum of her own choosing, and for a host of reasons:

<u>UNENFORCEABILITY</u>

1.    The Employment Contract violates public policy
and law – providing, as it does, for the forfeiture of already-
earned, and already-paid, income; it is, therefore, illegal,
void <u>ab</u> <u>initio</u>, cannot be parsed, severed or saved, and, thus,
is unenforceable – an issue (Defendants neglect to mention) the
parties expressly and specifically agreed to reserve for
decision by this Court.

2.    The very arbitration clause upon which
Defendants' motion is grounded also violates public policy and
law, directing the arbitrators to award an illegal forfeiture
and purporting to strip Ms. White of statutorily-created federal
and state law rights and remedies; it is, likewise,
unenforceable as a matter of established law, even if it somehow
could be saved from the illegal Employment Contract.

<u>BEYOND THE SCOPE</u>

3.    The pertinent arbitration clause, by its terms,
is limited in scope, calls for arbitration of only those
disputes "arising under the Agreement," limits the arbitrator to
making an award "based upon the provisions of the Agreement,"
and does not include any of Ms. White's claims in this action
which arise, not under her employment agreement, but under
federal and state anti-discrimination laws.

2

4.    Ms. White's separate retaliation claim, arising out of, and relating to acts and matters entirely unconnected to her employment or Employment Contract, are also not within the scope of the arbitration provision.

\*            \*            \*

As detailed further below, the Employment Contract, and the arbitration provision, all drafted by Defendants, whether considered alone or together, represent an "integrated scheme to contravene public policy," and their moving papers, are pure obfuscation and gamesmanship:  they quote at length from an arbitration provision that they know does not apply, and fail to quote relevant parts of the provision that does; they knowingly misrepresent the terms of the agreements they drafted – ignoring the very term in the employee handbook arbitration provision that expressly provides that it is superseded by the arbitration provision in the later-signed Employment Contract; avoiding language in the Employment Contract that reserved to the court the issue of its enforceability; and then failing to include and/or misstating controlling law that clearly goes against them, relying instead on boilerplate principles and strawman arguments (e.g., arbitration is generally favored by the courts) that, on even a cursory look, are all entirely beside the point.

In all the circumstances, Defendants' request to send this case to industry (or any other) arbitration should be denied in its entirety.

## STATEMENT OF THE CASE

The facts, as alleged in the Complaint ("Cplt.") (incorporated herein by reference and annexed as Exhibit A to the accompanying Declaration of Mitchel H. Ochs, dated October 23, 2007), and which must be accepted as true for these purposes, may be summarized as follows:

### A.    The Parties

Ms. White is a 25-year old, magna cum laude, graduate of Princeton University, where she majored in political science, was awarded the Princeton Environmental Institute Thesis Prize for outstanding senior thesis in environmental studies, was honored with the George Schultz Fellowship for excellence in undergraduate thesis based on topics related to public policy, and was given a grant from the former Secretary of State to travel to six game reserves in Kenya to conduct research. Cplt., ¶ 7.

Defendants are variously a Wall Street financial services company, Wall Street brokerage and trading firms, and the President and head of an all-male credit derivatives brokerage desk, and self-described "frat house." Cplt., ¶¶ 1, 8-12.

4

B.    Background

Ms. White joined, as an at-will employee, defendant BGC Partners as a broker on its all male derivatives desk at a starting salary of $60,000.00.  Cplt., ¶ 19.[1]

Within several months of joining, Ms. White established herself as among the top one or two business producers on the desk.  Cplt., ¶ 22.  Ms. White – as a result of her job performance – was offered an Employment Contract, doubling her base salary and providing a more favorable formula for earning commissions above her base salary.  Cplt., ¶ 23.  In her first year of employment, Ms. White earned in excess of $300,000.00 in gross pay including salary and earned commissions.  Cplt., ¶ 25.

In the brief discussions Ms. White had with general counsel about her Employment Contract, Ms. White was told it was "non-negotiable."  Cplt., ¶ 23.  In fact, and unknown and undisclosed to Ms. White at the time, her Employment Contract unlawfully provided, among other things, that if she left, even if as a result of a hostile work environment or sexual

---

[1]  At or about the time she joined, Ms. White was required to sign on to an Employee Handbook that contained, among other things, a multi-page, single spaced, arbitration provision purporting to reserve for arbitration "any and all claims" . . . "of any kind involving [Ms. White] and any Cantor Fitzgerald Group Company" . . . "including . . . those related to  . . . employment discrimination . . . under Title VII of the Civil Rights Act of 1964 . . . and any similar federal, state, or local statute, regulation or ordinance and any and all claims under the common law of any state or otherwise."  October 9, 2007 Declaration of Rose Higgins ("Higgins Decl."), Exhibit A, p. 2.

harassment in violation of federal and state law, she would be required to forfeit all of her already-earned and already-paid income, and then some:

> BGC and Employee agree that . . . should Employee . . . leav[e] the service of BGC . . . without BGC's consent . . . BGC's damages [will be] a sum equal to 150% of Employee's total compensation during the first calendar year of his [sic] employment . . . .

Cplt., ¶ 24; Higgins Decl., Exhibit B, at Section 10, pp. 7-8. This provision, in effect, if not by design, gave to Defendants an unfettered license to harass Ms. White with financial impunity.

The Employment Contract contained a very different arbitration provision from the one in the Employee Handbook, limited in scope, calling for arbitration of only those disputes "arising under this Agreement," limiting the arbitrators to making their awards "in accordance with and based on all provisions of this Agreement," making no mention of Title VII or other like claims, expressly made subject to the illegal forfeiture provision, authorizing the arbitrator to award an illegal forfeiture to Defendants while at the same time

stripping Ms. White of federal-statutory and state-statutory

granted rights to punitive damages and attorneys' fees:[2]

> <u>Subject to the provisions of Sections 8 and 10 [illegal forfeiture], any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration</u> before a panel of three arbitrators in New York, New York, according to the rules of the National Association of Securities Dealers, Inc. (or, at BGC's sole discretion, the American Arbitration Association or any other alternative dispute resolution organization) now in force and hereafter adopted and the laws of the State of New York then in effect. <u>The arbitrators shall make their award in accordance with and based upon all provisions of this Agreement</u> and judgment upon any award rendered by the arbitrators shall be entered in any court having jurisdiction thereof. However, <u>it is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary or punitive damages or amounts in the nature of special, exemplary or punitive damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration, except that the arbitrators shall be authorized and entitled to include as part of any award rendered by them in favor of BGC Liquidated Damages (as herein defined) provided for in this Agreement.</u>

Higgins Decl., Exhibit B, at Section 9, p. 7 (emphasis added).

---

[2] Not too surprisingly, the Employment Contract at Section 11 purports to provide for one-way attorneys' fees in favor of the Defendants only. <u>See</u> Higgins Decl., Exhibit B, at Section 11, p. 8.

The Employment Contract further recites that it constitutes the "entire agreement" between and among the parties, and supersedes all other agreements governing Ms. White's employment.[3]  Higgins Decl., Exhibit B, at Section 11, p. 8.  The Employment Contract further expressly reserved the determination with respect to the legality or enforceability of the Employment Contract, or any of its terms, to the Court; the Employment Contract provides, in part, under the heading "Enforceability":

> In the event that a <u>court</u> <u>of</u> <u>competent</u> jurisdiction <u>shall</u> determine that any covenant set forth in this Agreement is . . . impermissible [] . . . .

<u>Id.</u> (emphasis added).

---

[3]  Defendants' papers were littered with references to the earlier arbitration provision; throughout their papers, Defendants persistently refer to both arbitration provisions, coyly, if studiously, refuse to say which one, or the other, they claim governs, and disingenuously fail to refer this Court to language in the arbitration provision in the employee handbook that expressly provides that the arbitration provision in Ms. White's later-signed Employment Contract governs:

> <u>You further understand that in the event that you are an employee with a duly executed written employment agreement signed by you and an authorized signatory of the applicable Cantor Fitzgerald Group Company, the arbitration of any disputes shall be as set forth in your written employment agreement</u>. If your written employment agreement makes no provision for the arbitration of disputes, then this Arbitration Agreement and Policy shall govern.

<u>See</u> Higgins Decl., Exhibit A, at 6 (emphasis added).

C.    The Sexual Harassment
      and Hostile Work
      Environment

There has not been, and may never be, any dispute as

to the nature and scope of the harassment and hostile work

environment to which Ms. White was subjected:

This harassment included unwanted sexual comments,

frequently emailing video files, in the open, across shared

computer monitors on the trading desk, depicting pornographic

and other exploitative sexual acts, websites for strip clubs and

the like, and routinely sending emails across the same, shared

monitors, referring to "snapping the back of Adeline's thong

into the speaker," "ripping Addy all day," "hand jobs," "blow

jobs," "sloppy seconds," and making $1,000.00 "bets" as to which

of the other male brokers "Adeline would like to drill."  Cplt.,

¶¶ 29-30.

Ms. White's supervisors, and others on the desk, also

created an environment that marginalized, embarrassed, and

demeaned her; she was repeatedly told that her successful

business with such gold-standard Wall Street firms as Bear

Stearns, Duetsche Bank, JP Morgan, and Bank of America were

because "she was a girl," and intimating that her male clients

expected <u>quid pro quo</u> sexual favors for the business she

generated with them; she was repeatedly belittle that she did

not/could not "entertain" clients, and therefore, develop

business in the same way that male brokers could by taking clients to Scores, VIP (Vipper), Privilege and other strip clubs and massage parlors around the city, subjected to routine displays of fists full of "play money" symbolizing the money they used for "entertainment" at such clubs, told by supervisors and others on the desk of having spent large sums on corporate cards in a single night at one of these clubs with clients, "maxing out credit cards" at these clubs and details about their sexual exploits; and, she was frequently embarrassed and ridiculed when, unknown to Ms. White, others on the desk would send sexually charged emails, when she was away from the desk, falsely suggesting that they were from Ms. White.  Cplt., ¶¶ 2, 31.

Ms. White's supervisors, not only participated in such behavior, but encouraged and rewarded it in others, including regularly excusing brokers who came late to work after a "boys night out" with clients, and referring trades and giving credit for trades that were the responsibility of Ms. White.  When Ms. White refused to socialize with the others at all-night drinking parties and strip clubs, she was ostracized.  When she complained to others, she was rebuffed.  Cplt., ¶¶ 3, 27-28, 32.

With no available recourse, and recognizing the physical and emotional toll the harassment had taken, Ms. White was left with no other alternative but to resign her position

and walk away from a financially lucrative and promising career. Cplt., ¶¶ 33-35.

D.    Prior Proceedings

In or about mid-March, 2006, Ms. White filed charges with the Equal Employment Opportunity Commission ("EEOC") and an investigation was undertaken to confirm the veracity of Ms. White's allegations of discrimination and hostile work environment.  Among other things, EEOC investigators undertook a year-long investigation including the request and review of thousands, if not tens of thousands, of pages of documents and on site interviews of current and past employees.  Cplt., ¶¶ 37-38.

On or about July 18, 2007 – following a more than one year investigation – the EEOC issued a determination as to the merits of Ms. White's charges under Title VII of the Civil Rights Act of 1964.  Among other things, the EEOC determined:

> The evidence obtained by the EEOC showed that Respondents knew or should have known that [Ms. White] was subjected to sexual harassment and failed to take reasonable appropriate actions to prevent the sexual harassment from reoccurring. [Ms. White] was required to work in a sexually hostile work environment by the Respondents that was severe, pervasive and had the purpose and effect of unreasonably interfering with her work environment. [Ms. White's] decision to resign her lucrative career with the Respondent on January 17, 2006

11

was constructive and causally connected
to the sexual harassment and sexually
hostile work environment she was
expected to endure while working for
the Respondents.

See Cplt., ¶ 15; and July 18, 2007 EEOC "determination" letter,

annexed as Exhibit B to the Complaint.

E.    Defendants' Retaliation

Many months after Ms. White severed her employment

relationship with Defendants, midstream into the EEOC

investigation of Defendants, after Defendants had produced

multiple boxes of documents and after interviews were scheduled

of Defendants' employees but before these interviews were to

take place, Defendants sent a carefully selected handful of

"instant messages," retrieved from Ms. White's computer, by and

between Ms. White and a third party unrelated to Ms. White's

employment, or to Defendants, and having nothing whatsoever to

do with the facts and circumstances of Ms. White's charges of

discrimination filed with the EEOC.  Cplt., ¶¶ 37-39.

At the time these documents were sent, Defendants knew

of the nature and severity of the ongoing EEOC investigation,

and knew that such documents would be personally embarrassing

and potentially devastating to Ms. White in her personal life if

distributed to others, including her then fiancé and now

husband.  Cplt., ¶ 40.

Defendants' cover letter threatened Ms. White by, among other ways, inviting Ms. White's counsel to "review [the documents] with Ms. [White]" and then call counsel [for Defendants] "should you wish to discuss them." Cplt., ¶ 41.

Defendants had no lawful reason or purpose to make known to Ms. White that they were in possession of these documents, and the nature and timing of their disclosure were intended to coerce Ms. White into withdrawing her charges with the EEOC, effectively terminating the ongoing EEOC investigation of Defendants. Cplt., ¶ 42.

<u>ARGUMENT</u>

DEFENDANTS' MOTION TO COMPEL
ARBITRATION SHOULD BE DENIED IN ITS
<u>ENTIRETY</u>

Arbitration provisions are contracts and, like any other contract, are subject to all of the general rules of contract interpretation and enforceability. <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985); <u>see also Mehler v. Terminix Int'l Co.</u>, 205 F.3d 44, 48 (2d Cir. 2000) (in deciding the scope and enforceability of arbitration agreements, "courts should generally apply state-law principles that govern the formation of contracts").

A.   The Arbitration Provision
     is Void and Unenforceable

Both the Employment Contract as a whole, and the
pertinent arbitration provision in particular, violate federal
and New York law, and are, therefore, void and unenforceable.

1.   The Employment Contract is
     Void and Unenforceable

Under New York Law, a contract that calls for
forfeiture of already earned income is unenforceable as against
public policy.  See Weiner v. Diebold Group, Inc., 173 A.D.2d
166, 167, 568 N.Y.S.2d 959, 961 (1st Dep't 1991):

> [There is a] long standing policy
> against the forfeiture of earned wages
> which applies to earned, uncollected
> commissions as well . . . [parties] are
> not free to enter into contracts which
> violate public policy . . .   Thus, if
> the . . . payments were payments of
> earned wages, the plaintiff could not
> contract to forfeit them . . . the
> terms of the agreement . . . must not
> conflict with public policy . . . and
> cannot be enforced.

(Citing Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 101, 550 N.E.2d
410 (1989)); Tuttle v. Geo McQuesten Co., 227 A.D.2d 754, 642
N.Y.S.2d 356 (3d Dep't 1996) (forfeiture of plaintiff's earned
commissions "would be violative of public policy" and New York's
Labor Law) (citing New York Labor Law § 193 (McKinney 2007));
Pachter v. Bernard Hodes Group, Inc., 2005 U.S. Dist. LEXIS
18005, *20 (S.D.N.Y. 2005).

An agreement that is unenforceable because it violates public policy or law, moreover, is void, ab initio, and none of its parts or provisions can be parsed, severed or saved. See 22 N.Y. Jur. 2d Contracts §§ 158 ("agreements against public policy are illegal, void and unenforceable, and courts will not recognize rights purportedly arising from them."); 162 ("a contract made in violation of a criminal or prohibitory statute is an unlawful undertaking and is void and unenforceable."); Szerdahelyi v. Harris, 67 N.Y.2d 42, 48, 490 N.E.2d 517, 521 (1986) ("it is a familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them . . . [a party's attempt to cure the illegality] may avoid future litigation but it cannot revive the void contract") (citations omitted); Harmon v. Ivy Walk, Inc., 2006 N.Y. Misc. LEXIS 3028 (S. Ct. N.Y. Co. 2006) (entire agreement, including arbitration clause, "unenforceable" when one of the parties is in violation of a licensing statute).

The Employment Contract, drawn by Defendants, expressly provides that Ms. White will forfeit up to 150 percent of her already-earned and already-paid compensation in the event she determines to leave Defendants' employ whatever the reason. Higgins Decl., Exhibit B, at Section 10, pp. 7-8. Such a forfeiture is illegal; the Employment Contract, as a whole, and

all of its provisions, therefore, are unenforceable as matter of basic contract law.

> 2.    The Arbitration Provision
> is Void and Unenforceable

The arbitration provision itself also violates the law and is, thus, null and void, even if it were capable of standing on its own separate and apart from the illegal Employment Contract; for one thing, it expressly incorporates by reference the unlawful forfeiture provision and directs the arbitrator(s) to award an illegal forfeiture. Id. at Section 9, p. 7. The arbitration provision is unenforceable for this reason alone.

The arbitration provision also unlawfully purports to take away Ms. White's federal-statutorily-granted rights to punitive damages and attorneys' fees – assuming, for the purpose of argument only that Ms. White's Title VII claims fall within the scope of the arbitration agreement in the first instance.[4] See discussion infra Part B. Such prohibitions violate law rendering the arbitration agreement itself void and unenforceable. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (while agreements to arbitrate statutory claims may be enforced, such an agreement to arbitrate can not

---

[4]    The directive to exclude attorneys' fees and punitive damages in the arbitration provision logically either makes the provision unlawful and, therefore, unenforceable, or, it is an acknowledgment that the scope of the provision does not, and was not intended to, cover Ms. White's discrimination claims which, as a matter of federal law, must provide for such rights and remedies.

"forgo the substantive rights afforded by statute."); Graham Oil Co. v. Arco Products Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994) cert. denied, 516 U.S. 907 (1995) (arbitration agreement held invalid where plaintiff's "statutorily-mandated rights" to punitive damages and attorneys' fees were forfeited):

> Because the arbitration clause employed by [defendant] compels [plaintiff] to surrender important statutorily-mandated rights afforded [under the statute], we hold that the clause contravenes the Act.
>
> *    *    *
>
> Here, the offending parts of the arbitration clause do not merely involve a single, isolated provision; the arbitration clause in this case is a highly integrated unit containing three different illegal provisions [i.e., punitive damages and attorneys' fees prohibited] . . . it establishes a unified procedure for handling all disputes, and its various unlawful provisions are all a part of that overall procedure.
>
> *    *    *
>
> Our decision to strike the entire clause rests in part upon the fact that the offensive provisions clearly represent an attempt by [defendant] to achieve through arbitration what Congress has expressly forbidden.
>
> *    *    *
>
> Such a blatant misuse of the arbitration procedure serves to taint the entire clause. As a leading treatise notes, severance is inappropriate when the entire clause

represents an "integrated scheme to contravene public policy." <u>Farnsworth on Contracts</u> § 5.8, at 70 (1990).

<u>See also</u> <u>Gambardella v. Pentec, Inc.</u>, 218 F. Supp. 2d 237, 246 (D. Conn. 2002) (striking down arbitration provision in Title VII action that prohibits award of attorney's fees):

> Citing the importance of the attorneys' fee provision to the enforcement of Title VII's statutory scheme, numerous district courts have ruled that arbitration agreements that provide that each party shall bear their own attorney's fees are void as against public policy.

<u>Desiderio v. National Ass'n of Secs. Dealers</u>, 191 F.3d 198, 205 (2d Cir. 1999) (Title VII claims not subject to "compulsory arbitration" unless plaintiff has "the right to compensatory and punitive damages, [and] fee shifting.").

<u>Stern v. Espeed, Inc.</u>, 2006 U.S. Dist. LEXIS 68655 (S.D.N.Y. 2006), upon which Defendants rely, actually makes Ms. White's point. In <u>Stern</u>, defendant, an affiliate of Defendants in this case, and its counsel, the same counsel appearing on behalf of Defendants in this case, conceded that punitive damages and attorneys fee awards are mandated in arbitrations involving Title VII claims, and that arbitration provisions that exclude such remedies are unenforceable as a matter of law. <u>Id.</u> at *11. Defendant, and its counsel, in <u>Stern</u>, argued that language in the arbitration agreement at issue – qualifying the

prohibition against awarding punitive damages and attorneys'
fees "unless otherwise required by law" – gave the arbitrator in
that case "the ability to award punitive damages in cases where
the law requires that such damages be available," thus "saving"
the arbitration provision from otherwise being unenforceable.
Id.  Of course, the arbitration provision in Ms. White's
Employment Contract contains no such "saving" language, and
Defendants do not otherwise claim.

Defendants are also wrong to suggest that this Court
is powerless to decide the enforceability of the Employment
Contract and/or the specific arbitration provision.  See
Defendants' Memorandum of Law at 10.  The law specifically
empowers courts to determine, in the first instance, the
enforceability of arbitration provisions.  See JLM Industries,
Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).  The
parties here also expressly agreed to submit the issue of the
enforceability of the Employment Contract, as a whole, to court.
See Employment Contract, Higgins Decl. Exhibit B, at Section 11,
p. 8.[5]

In sum, the Employment Contract and the arbitration
provision are alone, and together, an "integrated scheme to
violate public policy," are unlawful, void ab initio, can not be

_____

[5] Questions as to the validity of an entire contract must be decided by
a court, not in arbitration, "where the parties [so] intend." Prima
Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967).

severed or saved, and are unenforceable as a matter of contract law; Defendants' motion to compel, grounded on unenforceable agreements and provisions, therefore, should be denied for this reason alone.[6]

    B.    None of Ms. White's Claims
          Fall Within the Scope of the
          Arbitration Clause

        Courts determine whether a party's claim actually falls within the scope of an arbitration agreement as written. See, e.g., JLM Industries, Inc., 387 F.3d at 169; Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640 (S.D.N.Y. 1996); Coffey v. Cushman & Wakefield, Inc., 2002 U.S. Dist LEXIS 13226 (S.D.N.Y. 2002).  Courts in this district that have considered whether discrimination claims were subject to arbitration clauses have not compelled arbitration simply because, as a result of a broadly worded arbitration clause, the employment agreement could potentially be interpreted in such a way as to require arbitration of the claims.  Cronas v. Willis Group Holdings,

---

[6] If Defendants are holding back for Reply an argument that, in all events, this Court could/should revert back to the arbitration provision in the Employee Handbook, that argument would be unavailing to them as a matter of law.  See 22A N.Y. Jur. 2d Contracts § 472 ("Where there is a substituted contract between the same parties, the first contract is at an end and no action may be brought on it."); see Wigton v. Rosenthall, 747 F. Supp. 247 (S.D.N.Y. 1990) ("A superseding agreement creates new contractual obligations between the parties and supplants any prior agreement...[the new] agreement constituted a novation which extinguished" the prior agreement); Keen v. Jason, 187 N.Y.S.2d 825 (S. Ct. Suffolk Co. 1959), aff'd, 207 N.Y.S.2d 1001 (2d Dep't 1960) (restrictive covenant in employment contract rendered unenforceable where the parties subsequently entered into a partnership agreement).

Ltd., 2007 U.S. Dist. LEXIS 68797, at *36 (S.D.N.Y. 2007)
(citing Hoffman, 927 F. Supp. at 645).  Instead, courts have
required employees to arbitrate discrimination claims only where
the arbitration clause specifically "placed the employee
plaintiff on notice that he or she was waiving his or her rights
to bring discrimination claims in the federal courts."  Id.
(citations omitted).

     The arbitration provision in Ms. White's Employment
Contract is not the type considered by the courts to be "broadly
worded," in fact, calls for the parties to arbitrate only those
disputes that "arise under the Agreement," and limits the
arbitrators to making their awards "in accordance with and based
on all provisions of this Agreement," and nothing more.  Higgins
Decl., Exhibit B, at Section 9, p. 7.  Ms. White's claims do not
arise under the Employment Contract, but rather under federal
and state anti-discrimination and retaliation statutes and laws.
The phrase "arising under this Agreement" is otherwise not
defined in the clause, and none of the provisions of the
Agreement make any reference to the civil rights statutes or
discrimination claims in general.

     The case of Cronas v. Willis Group Holdings, Ltd.,
2007 U.S. Dist. LEXIS 68797 (S.D.N.Y. 2007)(Lynch, J.), decided
only a few weeks ago, is all four square, holding that the
"arising under this Agreement" language - the exact same

controlling language contained in Ms. White's Employment

Contract – was insufficient, as a matter of law, to require

arbitration of Title VII and New York State and New York City

anti-discrimination claims:

> The arbitration clause in the Agreement
> requires arbitration of any dispute
> that "aris[es] under th[e] Agreement"
> . . . Cronas's claims do not arise
> under her employment agreement, but
> rather under federal and state anti-
> discrimination statutes. Thus, the
> arbitration clause did not put Cronas
> on notice that she was waiving her
> right to pursue claims of employment
> discrimination in federal court. The
> phrase "arising under this Agreement"
> is not defined in the clause, and none
> of the provisions of the Agreement make
> reference to the civil rights statutes
> or to dismissal claims generally. . . .
> Accordingly, the clause contains no
> language that would have reasonably
> notified plaintiff that she was waiving
> her right to litigate federal
> employment discrimination claims in
> federal court.

Id. at *37-39; see also Coffey v. Cushman & Wakefield, Inc. 2002

U.S. Dist. LEXIS 13226, at *19-22 (S.D.N.Y. 2002); Hoffman, 927

F. Supp. at 644-645 (S.D.N.Y. 1996).

  Defendants were certainly capable of drafting, and

well-knew how to draft, an arbitration provision that clearly

provided for arbitration of employment discrimination claims

and, in fact, did so with respect to the arbitration provision

contained in the Employee Handbook.  The arbitration provision

in Ms. White's superseding Employment Contract, however, by its very terms, covers only "disputes arising under this Agreement," and discriminatory conduct such as that alleged in the Complaint, is not a term of employment under the Employment Contract. See Cronas, 2007 U.S. Dist. LEXIS, at *37-39.[7]

For the same reason, and with equal, if not greater force, Ms. White's retaliation claims, arising out of, and relating to, acts and matters occurring many months after she severed all relations with Defendants, and wholly unrelated to her employment or Employment Contract, are not within the scope of the limited arbitration provision. As to the arbitrability of this particular claim, Defendants have nothing whatever to say.

---

[7] Defendants' facile argument that because Ms. White asserts "discrimination claims" like those in other cases which have compelled arbitration, see Defendants' Memorandum of Law at 9, her claims, likewise, are arbitrable, is without merit. All of those cases involved arbitration clauses which specifically referred employee discrimination claims to mandatory arbitration. See Benson v. Lehman Brothers, Inc., 2005 WL 1107061, at *2 (S.D.N.Y. 2005) ("any controversy arising out of or in connection with my compensation, employment, or termination" and "any claims or actions under Title VII, the ADA, the ADEA or any other federal, state or local discrimination laws."); Martin v. SCI Mgmt. L.P., 296 F. Supp. 2d 462, 466 (S.D.N.Y. 2003) ("all disputes relating to any aspect of Employee's employment" and "breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation and emotional distress."); Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 629, 619 N.E.2d 998 (1993) ("any dispute, claim or controversy that may arise between [himself] and [his] firm" including "any controversy . . . arising out of [his] employment or termination of employment."); Chamois v. Countrywide Home Loans, 2003 U.S. Dist. LEXIS 23202, at *3 (S.D.N.Y. 2003) ("all claims or controversies . . . whether or not arising out of, relating to or associated with the Employee's employment" including "claims for discrimination or harassment on bases which includes sex.")

CONCLUSION

For all of the foregoing reasons, Ms. White respectfully requests that this Court enter an Order denying Defendants' Motion to Compel Arbitration of any claims in this Complaint, in its entirety, awarding Ms. White costs, including reasonable attorneys' fees, involved in connection with opposing the Motion; together with such other and further relief as to this Court seems just and fair.

Dated:    New York, New York
          October 23, 2007

                              ANDERSON & OCHS, LLP

                              By: _____
                                  Mitchel H. Ochs (MO-7796)
                                  Jason A. Stern (JS-6941)
                              61 Broadway, Suite 2900
                              New York, New York 10006
                              (212) 344-3600

                              Attorneys for Plaintiff

24