# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | X | |
| A.J. WHITE, | : | Case No. 07-CIV-8006 (DAB) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **(Filed Electronically)** |
| | : | |
| CANTOR FITZGERALD, L.P., BGC | : | |
| PARTNERS, L.P., BGC CAPITAL | : | |
| MARKETS, L.P., DANIEL M. | : | |
| LaVECCHIA, and KEVIN McNULTY, | : | |
| | : | |
| Defendants. | X | |


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO STAY OR DISMISS THIS ACTION IN FAVOR OF ARBITRATION**


**SAUL EWING LLP**
750 College Road East – Suite 100
Princeton, New Jersey 08540
(609) 452-3100
Michael A. Lampert (ML1064)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................1

LEGAL ARGUMENT.................................................................................................................2

POINT I:    The Employment Agreement Does Not Offend Public Policy And Is
            Enforceable In Its Entirety .........................................................................................2

    A.      The Liquidated Damages Provision Is A Reasonable Measure
            Of BGC's Damages ....................................................................................................2

    B.      The Liquidated Damages Provision Does Not Violate Public Policy By
            Forfeiting Earned Wages Or Commissions ...............................................................4

POINT II:   If, As Plaintiff Contends, The Employment Agreement Were Void "From The
            Beginning," The Employee Handbook Controls, And Plaintiff's Claims   Are
            Subject To Arbitration ...............................................................................................5

POINT III:  Plaintiff's Claims Are Within The Scope Of Her Agreements To Arbitrate...........6

    A.      Plaintiff's Employment Agreement Supplements The Employee Handbook .........6

    B.      The Employment Agreement's Arbitration Clause Is Valid And Enforceable .......7

    C.      Plaintiff's Claims Are Within The Scope Of The Employment
            Agreement's Arbitration Provision..........................................................................8

POINT IV:   Even If The Court Were To Adopt All Of Plaintiff's Arguments, Her Claims That
            Predate Her Employment Agreement Must Be Arbitrated First..............................9

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases:**

Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992) ..............................9

Conticommodity Services, Inc. v. Haltmier, 67 A.D.2d 480 (2d Dept. 1979) ...................4

Crown IT Servs. v. Koval-Olsen, 11 A.D.3d 263 (1st Dept. 2004)....................................2

Davis v. William Rosenzweig Realty Operating Co., 192 N.Y. 128 (1908) ......................5

Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985)..................................................10

Etokie v. CarMax Auto Superstores, Inc., 133 F. Supp. 2d 390 (D. Md. 2000).................8

Gateson v. ASLK-Bank, 1995 U.S. Dist. LEXIS 9004 (S.D.N.Y. 1995)...........................9

Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640 (S.D.N.Y. 1996) ..................................9

Keen v. Jason, 19 Misc. 2d 538 (Sup. Ct. Suffolk. Co. 1959), aff'd, 11 A.D.2d
    1039 (2d Dept. 1960) .....................................................................................................6

Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1485 (10th
    Cir. 1994) ......................................................................................................................9

Songer v. Mach Trucks, Inc., 23 A.D.2d 544 (1st Dept. 1965)..........................................2

Szerdahelyi v. Harris, 67 N.Y.2d 42 (1986) ......................................................................5

Topf v. Warnaco, Inc., 942 F. Supp. 762, 770 (D. Conn. 1996) ........................................9

Tuttle v. Geo McQuesten Co., 227 A.D.2d 754 (3d Dept. 1996).......................................4

Wechsler v. Hunt Health Sys., 330 F. Supp. 2d 383 (S.D.N.Y. 2004) ...............................2

Weiner v. Diebold Group, Inc., 173 A.D.2d 166 (1st Dept. 1991)..................................4, 5

Wigton v. Rosenthall, 747 F. Supp. 247 (S.D.N.Y. 1990) ..................................................6

Wright v. Circuit City Stores, Inc., 82 F. Supp. 2d 1279 (N.D. Ala. 2000) .......................8

**<u>Statutes and Other Sources:</u>**

New York Labor Law § 190 (McKinney 2007) ....................................................................4

Federal Arbitration Act, 9 U.S.C. § 3 (2004)....................................................................10

22 N.Y. Jur. 2d Contracts § 158........................................................................................5

## PRELIMINARY STATEMENT

Having twice signed arbitration agreements, Plaintiff now contends she need not arbitrate any part of her claims based on various theories that those agreements are invalid, inconsistent or limited in scope.  As we demonstrate in detail below, both of her agreements to arbitrate are valid, enforceable, consistent and cover all of her claims.  But, as we show in the last section of this brief, even if some (or all) of her arguments on this motion were valid – and they are not – certain of her claims occurred after she executed the Employee Handbook but before executing the Employment Agreement.  Those claims are subject to the broad, enforceable obligation to arbitrate in the Handbook – she never says otherwise.  Federal law requires that until those claims are arbitrated, litigation on any other related claim must be stayed.  Her opposition does not demonstrate that our motion should not be granted, ***at least in part***.  Thus, the only issue on this motion is whether it should be entirety granted, or whether, as she contends, some part of it should be denied and left for later litigation.  As we show below, none of her claims should be preserved for later litigation.  Her arguments to the contrary invoke inapplicable statutory provisions, categorically assert alleged defects in her Agreement and strain to find inconsistency between the Handbook and her Agreement when there is none.

## STATEMENT OF FACTS

Although the only facts relevant to this motion relate to Plaintiff's two promises to arbitrate, she uses 13 pages of her "Facts" section to repeat her claims on the underlying dispute, and needlessly includes the complaint.  We will address all of her allegations at an appropriate time and in the appropriate forum –not now, on a motion to stay and not here, but in arbitration.

We rely on our prior statement of facts.  A few essential facts deserve emphasis.  First, Plaintiff does not contest that she knowingly and voluntarily executed the Arbitration Agreement contained in the Employee Handbook.  <u>See</u> Arbitration Agreement and Policy, Exhibit A to Declaration of Rose Higgins ("Arbitration Agreement" or "Handbook").  Nor does Plaintiff contest

that her claims are within the scope of that Agreement. Second, it is uncontested that in January 2005, Plaintiff voluntarily and knowingly executed the Employment Agreement, which contains a broad arbitration provision. See Employment Agreement, Exhibit B to Higgins Declaration ("Employment Agreement").

## LEGAL ARGUMENT

### Point I

### The Employment Agreement Does Not Offend Public Policy And Is Enforceable In Its Entirety [1]

#### A. The Liquidated Damages Provision Is A Reasonable Measure Of BGC's Damages

Plaintiff attacks the liquidated damages provision, although BGC has not invoked it despite her early departure in violation of the Agreement. Her attack on the provision, which has never affected her, fails because the liquidated damages provision is a rational and valid measure of BGC's damages and not a forfeiture of earned income.

An employment contract that provides for liquidated damages is enforceable if the damage amount "bears a reasonable proportion to the probable *loss*." Crown IT Servs. v. Koval-Olsen, 11 A.D.3d 263, 265 (1st Dept. 2004) (emphasis added); see Songer v. Mach Trucks, Inc., 23 A.D.2d 544 (1st Dept. 1965) (holding liquidated damage provision triggered by early resignation enforceable). Liquidated damages provisions are invalid only if "the amount fixed is plainly or grossly disproportionate to the probable *loss*." Crown IT Servs., 11 A.D.3d at 265 (emphasis added) (upholding liquidated damages based on *employer's* share of employee's annual billing). The employee bears the burden of proving that the amount is disproportionate to the employer's expected harm. See Wechsler v. Hunt Health Sys., 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2004) (stating that challenger bears burden of proof).

Plaintiff's Employment Agreement was for two years. See Employment Agreement, at 1. Under it, Plaintiff received 55% of the "net commissions" she generated; BGC received 45%. Id. at

---

[1] As noted in our opening memorandum of law, the parties agreed that this is a question for the arbitrators, not this Court. We address it here because Plaintiff has wrongly addressed it to this Court.

2.  By way of illustration, if she generated $10,000 in net commissions in a month, BGC's would receive $4,500.  If she breached her contract by resigning after only two months, she would cost BGC $99,000 in lost commissions ($4,500 multiplied by the 22 months left).  Under the Agreement, if Plaintiff resigned during the first year, the liquidated damages to BGC would be 150% of Plaintiff's total compensation for the year.  Continuing the above illustration, if she resigned after two months, she would have earned $11,000 in commission ($5,500 times two) and $18,333 in base salary,[2] totaling $29,333.  Plaintiff would have to pay BGC $43,999 in liquidated damages (150% of $29,333).  Thus, the liquidated damages provision is reasonable given BGC's actual loss of $99,000.[3]

These illustrations show the reasonableness of the liquidated damages provision in measuring the **harm to the employer** – as the cases require.  That harm, as just shown, is greater than the Plaintiff's compensation.  Plaintiff has adduced no evidence and engaged in no detailed analysis to show otherwise.  Rather, she has simply quoted the language and asserted, *ipse dixit,* unreasonableness, even though, as noted above, she has the burden of proof on this issue.

The Employment Agreement, voluntarily and knowingly executed by Plaintiff, says that both parties were aware that the liquidated damages provision was a "good faith effort to pre-estimate" BGC's damages and "not a penalty."  See Employment Agreement, at 7-8.  Plaintiff, who acknowledges she was a sophisticated and accomplished Princeton graduate, see Complaint, at ¶¶ 2, 7, is legally presumed to have understood the calculations justifying the liquidated damages provision and agreed to its methodology in exchange for a two-year term of employment.

---

[2] The Employment Agreement gave Plaintiff an annual base salary of $110,000 (or $9,166 per month).  See Employment Agreement, at 2.  The Agreement also deducted Plaintiff's base salary from her share of the commissions.  Id.  For simplicity that calculation is excluded above.  If incorporated, it would only *decrease* the liquidated damages.

[3] After the first year, the Agreement calculates liquidated damages based on the prior 12 months' earnings and reduces the percentage based on the time left on the contract.  Thus, for a breach with 12 to 8 months left on the contract, the damages equal 66% of earnings for the previous 12 months.  If an employee breaches with 4 months or less remaining on the contract, damages fall to 25% of the prior 12 month's income.

**B. The Liquidated Damages Provision Does Not Violate Public Policy By Forfeiting Earned Wages or Commissions**

Despite having never been asked by BGC for any liquidated damages, despite her Complaint not asserting that BGC ever failed timely to pay her anything, Plaintiff says the liquidated damages provision is an illegal forfeiture of earned income. See Answering Memo., at 14.

First and foremost, the liquidated damages provision is not a forfeiture of earned income. The Employment Agreement does not authorize BGC to withhold earned income. Rather, it represents the parties' agreement regarding judicial calculation of BGC's damages if Plaintiff breaches, using her commission as a benchmark. Her commission is used because, as noted above, her commissions are related to BGC's income from her efforts. If her view were correct, employees would always be immune from damages to their employer because the source of funds for the damages might be earnings from the employer. That is not the law.

Second, Plaintiff's reliance on Weiner v. Diebold Group, Inc., 173 A.D.2d 166 (1st Dept. 1991), and Tuttle v. Geo McQuesten Co., 227 A.D.2d 754 (3d Dept. 1996), is misplaced. Neither Weiner nor Tuttle involved liquidated damages. In both cases, the employer actually *withheld* earned income after the employee resigned and the employee demanded payment of those earnings. See Weiner, 173 A.D.2d at 166-67; Tuttle, 227 A.D.2d at 755.[4] Here, Plaintiff's Employment Agreement does not authorize forfeiture of earned income or commissions, and Plaintiff does not say that BGC withheld any of her compensation or commission.

---

[4] Furthermore, Tuttle was decided exclusively under the New York Labor Law, which does not apply to Plaintiff. A "commission salesman" is not covered by the New York Labor Law if engaged in "supervisory, managerial, executive, or administrative" work. N.Y. Labor Law § 190. Courts have concluded that individuals like Plaintiff fall within that exemption. See Conticommodity Services, Inc. v. Haltmier, 67 A.D.2d 480 8 (2d Dept. 1979) (account representative who uses independent judgment and solicits business acts in an administrative or executive capacity is not protected by the statute).

Additionally, Plaintiff fails to mention that Weiner's continuing validity is questionable. See Truelove v. Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 225 (2000) (holding that an "employee's entitlement to a bonus is governed by the terms of the employer's bonus plan.").

**Point II**

**If, As Plaintiff Contends, The Employment Agreement Were Void "From The Beginning," The Employee Handbook Controls, And Plaintiff's Claims Are Subject To Arbitration**

Plaintiff asserts that the Employment Agreement is void *ab initio* because it contains an unlawful liquidated damages provision. However, if the Employment Agreement were void from the beginning, which it is not, the Arbitration Agreement that Plaintiff previously executed in her Employee Handbook controls and requires granting this motion in its entirety.

If a contract is void *ab initio* it is vitiated and "the underlying transaction and supporting documents have no legal force or binding effect." Szerdahelyi v. Harris, 67 N.Y.2d 42, 48 (1986). The effect of a voided contract is that it "leaves the parties in the same situation as if no contract had ever been made." Davis v. William Rosenzweig Realty Operating Co., 192 N.Y. 128, 133 (1908). As Plaintiff notes, a contract voided *ab initio* cannot be "parsed, severed, or saved," and all its provisions are unenforceable. See 22 N.Y. Jur. 2d Contracts § 158.[5]

Based on ***Plaintiff's*** contention that the Employment Agreement is void *ab initio,* the Court should treat her as though it were never executed. In that event, she cannot deny being bound by the Arbitration Agreement in the Handbook, which specifically requires arbitration of all of her claims, including Title VII and related employment discrimination claims.

In her opposition brief, Plaintiff cites two cases for the purported proposition that the Employee Handbook cannot be given effect because the Employment Agreement supersedes all prior contracts. See Answering Memo., at 20 n.6. Neither case involved contracts void *ab initio*. Rather, they concerned valid, temporally sequential agreements that contradicted each other. See Wigton v. Rosenthall, 747 F. Supp. 247, 249 (S.D.N.Y. 1990) (dismissing breach of contract claim where agreement superseded by subsequent contract); Keen v. Jason, 19 Misc. 2d 538 (Sup. Ct. Suffolk. Co. 1959) (declining to enforce covenant because of superseding partnership agreement), aff'd, 11

---

[5] But not every contract with a void provision is void *ab initio*. Normally the single void provision is stricken and the rest given effect. In light of the severance provision here, even if the liquidated damage provision were void – and it is not – the arbitration provision would still be valid and enforceable.

A.D.2d 1039 (2d Dept. 1960).  Here, if Plaintiff's Employment Agreement were void as she contends, there is only one enforceable contract – the Arbitration Agreement in the Employee Handbook.  It is inconsistent for Plaintiff to argue that the Employment Agreement is a nullity while simultaneously asserting that it superseded the Arbitration Agreement.  Taking her at her word, this Court should stay the entire case in favor of arbitration.

**Point III**

**Plaintiff's Claims Are Within The Scope Of Her Agreements To Arbitrate**

**A.  Plaintiff's Employment Agreement Supplements The Employee Handbook**

Plaintiff argues that the Employment Agreement's integration clause eviscerates her obligations under the Handbook.  That contention is supported by the language of neither.

The Employee Handbook provides:  "Even if you are an employee with . . . a duly executed written employment agreement, ***Cantor Fitzgerald requires that you abide by all policies and guidelines set forth in this Employee Handbook*** (and all other terms of your employment agreement)."  See Employee Handbook, Exhibit A to Supplemental Declaration of Rose Higgins, at 47 (emphasis added).  Plaintiff signed the Employee Handbook on May 7, 2004.  See id.  Plaintiff's Employment Agreement is consistent.  It limits its integration provision to matters it directly addresses:  "This agreement contains the entire agreement of the parties ***with respect to the subject matter hereof*** . . . ."  See Employment Agreement, at 8.

The integration clause is qualified so as not to invalidate the Handbook.  Rather, it fully integrates into the final, written version of the Employment Agreement oral promises.  Similarly, the Employee Handbook communicates to contract employees that they must comply with the Handbook "***and*** all other terms" of their employment agreement.[6]  It would be irrational for BGC to require at-will employees to sign the Handbook's broad Arbitration Agreement but then release contract

---

[6] As a practical matter, if the Employment Agreement eradicated Plaintiff's responsibilities under the Handbook, she would be free from many generic obligations in the Handbook – such as BGC's smoking policy.  That cannot be correct.

employees from that agreement when they signed long-term employment contracts.[7]  On the contrary, the parties' intended that Plaintiff remain subject to the Handbook's polices, specifically requiring arbitration of Title VII and related state and local statutory claims.  <u>See</u> Arbitration Agreement at 2.  Plaintiff does not contest that her claims are within the Handbook's arbitration provision's scope.

### B.  The Employment Agreement's Arbitration Clause Is Valid And Enforceable

Plaintiff says that the Employment Agreement's Arbitration Clause is an "integrated scheme to violate public policy" because it incorporates by reference the "unlawful forfeiture provision" and allegedly limits recovery of punitive damages and attorney's fees for Title VII claims.  Answering Memo., at 19.  As shown above, the liquidated damages are not a forfeiture.  Plaintiff's allegation that the Arbitration Clause unlawfully limits her Title VII remedies is misguided for two reasons.

First, as proved above, the Agreement operates in conjunction with the Handbook.  The Handbook requires arbitration of Title VII claims but ***does not*** limit Plaintiff's remedies.  <u>See</u> Arbitration Agreement, at 3.  The Agreement, on the other hand, limits punitive damages and attorney's fees because that provision applies to ***contract*** disputes under the Employment Agreement – a lawful restriction irrelevant for at-will employees governed solely by the Handbook.  It would be illogical for BGC to limit recovery for Title VII claims via individual contracts while permitting BGC's many at-will employees subject only to the Handbook to seek additional remedies.  Rather, the logical interpretation of the Agreement's additional remedies limitation is that it applies only to ***contract*** disputes.  Her claim that it is unlawful to limit Title VII remedies is irrelevant because the Agreement does not do so.

---

[7] In this regard, the Handbook's Arbitration Agreement provides that "in the event that you are an employee with a duly executed written employment agreement . . . the arbitration of any disputes shall be as set forth in your written agreement."  That clause, read as an entirety,  refers to the arbitration of any disputes involving the terms of the written contract.  The Handbook's arbitration provisions do not address contract claims because the Handbook pertains mostly to at-will employees without individual contracts.  This is also why, as Plaintiff notes, the Employment Agreement's arbitration provision did not restate the laundry list of claims that are subject to arbitration under the Handbook.  Those claims are arbitrable under the Handbook.  Each document discusses arbitration of claims it describes; they are complementary, not inconsistent as Plaintiff would illogically have this Court hold.

Second, even if the Employment Agreement's remedies provision was improper (which it is not and is a question for the arbitrators, not this Court), the Arbitration Clause does not amount to an "integrated scheme to violate public policy" because of the Agreement's severability provision.  It says:  "The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions and this Agreement shall be construed in all respects as if such valid or unenforceable provisions were omitted."  Employment Agreement, at 8.

Severance of contractual terms is appropriate if the challenged language is not so interwoven with other provisions as to be logically inseparable.  Thus, when appropriate, courts have severed terms from arbitration agreements that limited Title VII remedies.  See Wright v. Circuit City Stores, Inc., 82 F. Supp. 2d 1279, 1287 (N.D. Ala. 2000) (severing provision limiting Title VII punitive damages); Etokie v. CarMax Auto Superstores, Inc., 133 F. Supp. 2d 390, 393 (D. Md. 2000) (severing provision limiting Title VII costs and punitive damages).

Here, the arbitration provision is easily severable.  The language challenged by Plaintiff is in an isolated sentence easily omitted from the agreement.  See Employment Agreement, at 7 ("However, it is understood that and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary or punitive damages . . . .").  The entire arbitration provision is not unenforceable as a "scheme to violate public policy."

### C.  Plaintiff's Claims Are Within The Scope Of The Employment Agreement's Arbitration Provision

Plaintiff's assertion that employment discrimination claims are not arbitrable unless they are specifically named in the agreement is incorrect.  See Answering Memo., at 20-22.  A court will enforce an arbitration agreement if it places the employee on notice that the employee is required to arbitrate the disputed claims. See Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640, 644 (S.D.N.Y.

1996). Thus, courts consistently require employees to arbitrate Title VII employment discrimination claims based on broad yet clear arbitration clauses.[8]

Contrary to Plaintiff's claim, courts in this District have compelled arbitration of Title VII claims based on clear, broad arbitration provisions.  See Gateson v. ASLK-Bank, 1995 U.S. Dist. LEXIS 9004 (S.D.N.Y.) (requiring arbitration of Title VII, the NY Human Rights Law, and NYC Administrative Code claims based on a provision stating that "[a]ny controversy arising out of or relating to this Agreement or the breach hereof shall be settled by arbitration").

Here, the Arbitration Clause requires Plaintiff to arbitrate "any disputes, differences, or controversies arising under this Agreement."  This is similar to the language in the cases above and put Plaintiff on notice of her duty to arbitrate employment discrimination claims.  Plaintiff was also aware of BGC's employment discrimination claims arbitration policies because she executed the Employee Handbook, containing a list of arbitrable claims.

### Point IV

### Even If The Court Were To Adopt All Of Plaintiff's Arguments, Her Claims That Predate Her Employment Agreement Must Be Arbitrated First

Plaintiff's sexual harassment and hostile work environment claims are based on alleged conduct before she executed the Employment Agreement.  See Plaintiff's Complaint, ¶¶ 1, 2, 27, 28. Plaintiff specifically alleges that in "September 2004" Defendant McNulty sexually harassed her and that "after that evening, [she] tried to avoid McNulty-sponsored" events.  Id. ¶ 28.  Plaintiff also alleges that "shortly after" she joined BGC "in May 2004, . . . [she] was the target of repeated, incessant, and unlawful sexual harassment and hostile work environment."  Id. ¶ 1.  Those claims predate the Employment Agreement executed on January 1, 2005.

---

[8] See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1485 (10th Cir. 1994) (holding Title VII claim arbitrable under agreement to arbitrate "all claims or disputes between her" and employer); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir. 1992) (compelling arbitration of sexual harassment claim under clause agreeing to "arbitrate any dispute, claim or controversy that may arise between me and my firm."); Topf v. Warnaco, Inc., 942 F. Supp. 762, 770 (D. Conn. 1996) (requiring arbitration of Title VII claim and refusing to adopt a rule that all employment claims must be specifically named in the arbitration provision).

Plaintiff does not contest that the Handbook requires arbitration of sexual harassment and hostile work environment claims and it was the only document applicable at the time.  <u>See</u> Arbitration Agreement, at 7.  The Federal Arbitration Act requires a court to bifurcate proceedings if it determines that some claims are subject to arbitration while others are not.  <u>See Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 217 (1985) ("the [Federal] Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel").[9]

As the Supreme Court noted in the very first sentence of its decision in <u>Volt Info. Sciences v. Leland Stanford Jr. U.</u>, 489 U.S. 468 (1989) (emphasis added) (citation omitted): "***Unlike its federal counterpart,*** the California Arbitration Act contains a provision allowing a court to stay arbitration pending resolution of related litigation."  Thus, although federal courts are not empowered to stay an arbitration pending a litigation, the Federal Arbitration Act expressly directs federal courts to stay litigation pending arbitration.  <u>See</u> 9 U.S.C. § 3 (2004).

The Court should, at an irreducible minimum, grant the motion, stay these proceedings, and compel arbitration because Plaintiff cannot deny that at least the claims that arose before the Agreement are subject to arbitration under the Handbook, which must occur first.

<u>**CONCLUSION**</u>

Because Plaintiff A.J. White presents no legal basis for invalidating the Employment Agreement or the Employee Handbook, and because her claims are within the scope of both of those agreements' arbitration provisions, Defendants Cantor Fitzgerald, L.P., BGC Partners, L.P., BGC Capital Markets, L.P., Daniel M. LaVecchia, and Kevin McNulty respectfully request an Order enforcing Plaintiff's promise to arbitrate by staying or dismissing this action pending an arbitration of Plaintiff's claims.

---

[9] In those instances, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums," the proceedings should be stayed while the pendent claims are arbitrated.  <u>Id.</u>

Respectfully submitted,

SAUL EWING LLP
Attorneys for Defendants.


By: s/   Michael A. Lampert
           _____
MICHAEL A. LAMPERT (ML1064)
Saul Ewing LLP
750 College Road East – Suite 100
Princeton, New Jersey 08540
(609) 452-3100


Dated:  November 2, 2007.